NORTH RIVER INSURANCE CO OF NEW YORK v OHMER, d. b. a., et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1546. Decided June 3, 1939

C. R. Curtner, Dayton, for Plaintiff-Appellant.

Daniel L. Dwyer, Dayton, for Defendant-Appellee.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in favor of the defendant.

The case arose in Municipal Court and was tried to a Judge without intervention of a jury.

There is but one substantial question presented, namely, did the trial judge, in determining the case, apply an unsound principle of law.

On October 26, 1934, George L. Cole-man was the owner of a 1934 Chevrolet car then one month old. It was stolen on that date. Mr. Coleman carried a policy with plaintiff assuring against loss occasioned by theft of the automobile. The car was recovered a day or so after it was stolen. It had been wrecked and upon proof of claim by Mr. Coleman, plaintiff paid to him, representative of his loss, the sum of $221.78 and took an article of subrogation from Mr. Coleman.

The plaintiff, as subrogee of Mr. Coleman, instituted its action against defendant for negligence as bailee in permitting the car to be removed from the Ohmer Garage.

The defendant operated the Ohmer Garage. George L. Coleman in October, 1934, and for many years prior thereto, rented space on the ground floor of the Garage for storage of his car. This space was available to place his car or any one of four or five cars which belonged to plaintiff or to members of his family. When men brought in or took out Coleman's cars they drove them in and out of the Garage; when the women members of Coleman's family came in or left the Garage with a car, the attendants generally placed the car and brought it to the driveway.

The plaintiff averred that his car was to be delivered to himself or to persons positively identified and authorized by him to receive said car upon demand. Defendant, by its witnesses, admitted that the contract originally was substantially as alleged in the statement of claim, but asserted that it had become the practice, with the express sanction of plaintiff, to let the car out, not only to the plaintiff, his son, his daughter-in-law, Mr. Utzinger, an employee of plaintiff, but to employees of the S. W. S. Chevrolet Service Station. Two of the witnesses for the defendant testified that a short time before the car of plaintiff was stolen they had insisted upon the identification of a man who called to get plaintiff's car; that this incensed plaintiff and he berated them for not letting the man who called have his car without further identification. This occurrence, as testified by

defendant's witnesses, was not denied by Mr. Coleman. Mr. Coleman testifies that about 2:00 P. M. on October 26, 1934, he placed his car in the usual space in the Ohmer Garage; at about 4:45 P. M. he returned to pick his automobile up and found it missing; that he reported the fact to the garage employees. Defendant's witnesses say that Mr. Coleman came to the Garage about 5:30 in the evening, observed that his car was missing, went to the phone, put in a call, then left the Garage for some fifteen minutes, came back and said that the car should be reported as stolen.

John Cobey, Manager of the defendant Garage, testified that the Coleman Chevrolet was taken from the Garage by S. W. S. employees more than once on the day it was stolen, although he only has personal recollection of it having been taken in the morning around noon of that day.

Raymond E. Huston, on the date that the car was stolen, was employed as a driver of the Ohmer Garage and states that in the early afternoon a man, presumably from the S. W. S., took the car from the Garage; that he knew it was an S. W. S. man; he also said if anybody had come in, who appeared to be from the S. W. S. Garage, he would have let him have the car without objection. In fact, he said, if a stranger came in he would have made no objection but would have immediately reported that someone took the car out. He said he was at the Garage all afternoon and did not remember the car coming back. He further states that he informed Mr. Cobey of what had occurred. The witness, Huston, probably weakened his testimony by the fact that early in his examination he said that he did not know how nor when the car came in or went out on the day it was stolen, although it is possible that the witness did not fully comprehend the question to which he made such reply. Mr. Huston is corroborated by Mr. Cobey to the effect that he, Huston, did notify Cobey that the car was taken from the Garage by an S. W. S. employee. Mr. Cobey testifies further that

he made inquiry of every employee in the Garage as to his knowledge respecting the removal of the car.

The car was recovered near Cincinnati. The thief, DeForest Partridge, was apprehended and returned to Dayton where he plead guilty. At the time of the trial he was in the Ohio penitentiary serving time for the offense of the theft of the car. Neither party used Partridge as a witness, although the trial judge expressed a desire to have the benefit of his testimony and continued the case that defendant might have the opportunity to take his testimony.

The record discloses that Mr. Coleman was quite particular about his car and that it was frequently serviced by the S. W. S.

Robert Rumpf, Service Manager of the S. W. S. Chevrolet Company and R. E. Ryan with the Sales Department of said Company, were both on the stand for plaintiff and were the only representatives of that Company who testified. Neither was interrogated on the vital question whether or not, on the day that the car was stolen, it had been in to the S. W. S. station. At some place in the record, however, counsel for defendant volunteered the statement that there was no record with the S. W. S. Company that the car had been in the station on the day it was stolen. Nor does the record carry the information whether or not a record would have been made, in all instances, if the car had been brought into the S. W. S. station.

Mr. Cobey testifies that he went down to Cincinnati when Mr. Partridge was returned to Dayton; that they found on him a salesman's card from the S. W. S. Company bearing the name of Krietzer. It also appears that Partridge was interrogated at length by the police. In view of this fact and inasmuch as the Court granted time within which Partridge's testimony might be taken, we feel justified in drawing the inference that one or more of the parties knew what Partridge had said or would say respecting the place from which he stole the car. It is urged that

the word of a thief would not be taken against the records of the S. W. S. Company, but it is altogether possible, indeed it is probable, that a full statement from the thief as to the time when, the place from which and the circumstances under which he removed the car could have been checked and his story could either have been corroborated or found to have been unworthy of belief. It may have been good strategy to have kept from the Court any statement from Partridge, but it certainly withheld from the trial judge and from reviewing courts information which might have been most helpful.

The trial judge held with the defendant and rendered a written opinion which is made a part of the Bill of Exceptions.

In the transcript of docket and journal entries, we find an entry stating that the Court's decision of special findings of law and fact, rendered December 24, 1936, is ordered made a part of the record and Bill of Exceptions in above entitled case. In fairness to the trial judge, it should be said that the decision was not prepared upon any request for special findings of law and fact. It is incomplete as to findings of fact. Insofar as it determines facts, we will, in view of the entry, accept them.

The Court finds that Mr. Coleman's car was stolen by one DeForest Partridge and the next day was recovered by the police of Cincinnati, Ohio; that said Partridge afterwards plead guilty to the charge of theft and was sentenced to the Ohio State Penitentiary where he is now confined. It will be noted that the Court makes no finding relative to the contract between the parties, its terms or conditions; makes no determination whether or not the car was taken from the Ohmer Garage on the date it was stolen, after Mr. Coleman parked it, by any one authorized to take it. These were vital factors, because obviously the degree of care which the defendant owed to Mr. Coleman was, although the same in law, namely, ordinary care, in fact was quite different under the respective claims of the parties as to the controlling contract and particularly the conditions under which the car was released to persons other than Mr. Coleman.

The Court further said:

"It is the opinion of the Court that **Blackburn v Norris, 46 Oh Ap 473,** is the law governing this case. Quoting therefrom:

'If the plaintiff proves demand and refusal to deliver, and this is unexplained, it is prima facie evidence of negligence. But if it appear that the automobile was destroyed by fire, the failure to return is then explained, and the burden of proving that the loss was caused by the negligence of the garage owner rests upon the owner of the automobile.'

**Syndicate Parking Inc. v General Exchange Insurance Corporation,** Case 13614, Court of Appeals, Eighth District, Cuyahoga County, Ohio, also governs this case. The burden of proving negligence is always on the plaintiff and never shifts. Plaintiff in the instant case proved delivery and proved the theft. It is the opinion of the Court that plaintiff failed to prove by a preponderance of the evidence any negligence by defendant company, or its authorized agents or employees, * * * It is the opinion of the Court that the owner of the garage, the bailee, was in no sense an insurer, and the measure of care was only such as men of common prudence ordinarily bestow on their own property similarly situated under like circumstances. Defendant company has shown that there were six or seven regular employees on duty all the time during the day and up to the time this automobile could have been taken from the garage. In fact, there is no positive proof that this automobile was taken from this garage by the thief because no one saw the car driven out by the thief, or no one delivered the car to any person unknown to them or known to them.

Plaintiff failing to show by a preponderance of the evidence that defendant was guilty of any negligence such as

would charge it with other than ordinary care, the Court finds that the plaintiff's Statement of Claim should be dismissed."

The Court then cites a number of cases all of which are to the effect that the burden of proving negligence is upon the plaintiff. No objection can be made to the tenor of these cited cases.

There are some inconsistencies in the opinion of the trial judge, and we believe he announced an unsound principle of law, but inasmuch as the opinion is silent upon many of the vital facts in the case and the Court does find that the plaintiff has not established negligence on the part of the defendant and further specifically finds that it does not appear that the car was stolen from the Garage, we not not have before us enough to require that we reverse this judgment. If we could bring this case down to the proposition that the judgment rested upon and was controlled entirely by the application of a rule, that when it appeared that the car was stolen from the Garage the defendant had then met all the requisites of proof incumbent upon him, we would hold that such a rule should not be permitted to shape the judgment.

A late and satisfactory pronouncement of the law of this case is found in 8 C. J. S. 341:

"Generally speaking the burden of proof rests upon the bailor to show loss or injury to property bailed resulting from his bailor's negligence or other fault, at least, as distinguished from the burden of the evidence on the part of the bailee after the prima facie case made by the evidence adduced by the bailor."

At page 342:

"Notwithstanding an old rule to the contrary, under the modern rule, loss or injury of bailed property as by fire, theft or like cause, while in the hands of the bailee, ordinarily raises a presumption of negligence or other fault, casting on him the burden of proving

his freedom from wrong-doing, although this rule does not apply under all jurisdictions. In some of the older decisions it was held that the loss or injury raised no presumption or negligence on the theory that, the bailee not being considered an insurer of the goods, the law which never presumes any man negligent, would rather attribute the loss to excusable causes and that it was not enough for plaintiff to prove the loss or injury, but that he must go further and must show that the same had occurred by defendant's negligence."

Citing decisions from several states and continuing:

"The rule adopted in other and the more modern decisions is that the proof of loss or injury establishes a sufficient prima facie case against the bailee to put him on his defense and hence, where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes the bailee's negligence or other fault to be the cause and casts on the bailee the burden of showing that the loss was due to other causes consistent with due care on his part * * * and if the bailee does not sustain such burden, the bailor becomes entitled, as a matter of law, to a verdict in his favor."

Citing cases from many jurisdictions and continuing:

"The effect of this modern rule is not to shift the ultimate burden of proof from bailor to bailee but merely to shift the burden of proceeding or going forward with the evidence. The ultimate burden of establishing negligence is on the bailor and remains on him throughout the trial."

In an annotation to The Firestone Tire & Rubber Company v Specific Transfer Company, 26 A. L. R. 232, the annotater says:

"The weight of authority appears to support the proposition that, at least,

in actions based on negligence, the ultimate burden—in other words, in Wigmore's phrase,—the burden in the sense of the risk of nonpersuasion of proving negligence is ordinarily on the bailor, where he is seeking to recover for a loss of property which it is conceded or which the evidence tends to show, with reasonable certainty, has been stolen while in the possession of the bailee."

Numerous authorities are cited to support the proposition. Many cases hold that theft is not █ presumptive evidence of a want of ordinary care on the part of the bailee, as in Mills v Gilbreth, 47 N. E. 320. This seems to be sound doctrine. Neither should such proof in and of itself establish a presumption of due care on the part of the bailee.

The question is further considered as relates to presumption and burden of proof where subject of bailment is damaged or destroyed by fire in 9 A. L. R. 559; when the subject of bailment is stolen in 48 A. L. R. 378.

Of course, the law on the subject is extensively and exhaustively treated in many of the reports and text books and there is marked variance in pronouncement. We will not cite more of them.

If we were required to formulate a rule controlling presumption and burden of proof, where the subject of bailment is an automobile, we would say that when the relation- █ ship of a bailor and bailee appears, the property is shown to have been in the possession of the bailee under the contract and upon demand the bailee can not produce the automobile, a presumption of negligence on the part of the bailee will properly arise and plaintiff would be entitled to recover for any damage shown unless the bailee produces evidence of sufficient weight to counterbalance the presumption against him and that mere proof of theft of the automobile from the property of the bailee will not, in and of itself, meet the presumption made by plaintiff's case. It seems to us that any other

rule would be incompatable with rights which must be accorded the automobile owner who places his car with a paid bailee for safe keeping.

Let us make practical illustration. John Jones, from the middlewest, drives his automobile to New York to attend the Worlds Fair. He takes his car into a modern metropolitan garage where there are many floors, numerous attendants and hundreds of parked automobiles. He is given a check for his car. One week thereafter he goes into the garage, presents his check and is informed that his car has been stolen. He institutes an action against the bailee to recover damages for the loss of his automobile. Upon trial he establishes the bailment, that he left his car, that he demanded it and the bailee did not deliver it and rests. The bailee, thereupon, proves only that the car was stolen from its garage. Can it be said that it would be a fair and just rule to require this automobilist to go forward and disclose the negligent acts of the bailee and his servants in failing to prevent the theft of bailor's automobile? Should not the bailee be required not only to prove the theft but all conditions surrounding it which tend to exonerate him from the presumption of negligence which attends his refusal to produce the car upon the demand of the bailor?

Although, as we have heretofore quoted, the trial judge in this case indicated that the controlling authority was **Blackburn v Norris, 46 Oh Ap 473,** it clearly appears that he did not follow the principle of this case in the trial. At the conclusion of plaintiff's evidence the bailment had been proven. The demand and refusal to return the automobile had been established and it further appeared that the car had been stolen. Defendant insisted that upon this state of the record it was entitled to verdict and judgment. The Court held against this contention and required the introduction of the testimony of the defense. This was forthcoming and it was not predicated upon a presumption which arose from the fact that the car was stolen from the

possession of the bailee. It was based, first, upon the claim that the car was not stolen from the possession of the bailee and, second, that, if so stolen, the defendant, through its agents and employees, was not, in view of the contract between Coleman and the defendant, negligent.

In every case in which the presumption of due care on the part of the bailee has been indulged, when it appeared that the bailed property had burned or had been stolen, there was no question whatever that the property was in the possession of the bailee when it burned or when it was stolen.

A part of the finding of the Court is,

"In fact, there is no positive proof that this automobile was taken from this garage by the thief, etc."

This is equivalent to a determination that the proof is insufficient to show that the automobile was in the possession of the bailee under the bailment contract when stolen. Until this fact appears the plaintiff is not entitled to the presumption of negligence by the refusal or inability of the bailee to produce the automobile upon demand.

The finding of facts admits of a construction which will support the judgment. We are therefore required to so construe it. **Jack v Hudnall, 25 Oh St 255.**

As to all matters wherein the trial judge did not make specific findings, in the decision which we have considered as a separate finding of facts, we must assume that he found with the successful party, the defendant. So doing, we are unable to say that, upon the whole record, the Court erred when he found that the plaintiff did not prove that the car of Mr. Coleman was in the Garage at the time when it appears it was stolen or that the defendant was negligent. The situation thus presented is analagous to the two issue rule and it may be given application.

**Sites v Haverstick, 23 Oh St 262.**
**Butler v Kneeland, 23 Oh St 196.**
**McAllister v Hartzell, 60 Oh St 69.**
**Buschelmann v City of Cincinnati, 18 Oh Ap 346.**

It is urged by the defense that the plaintiff should not be heard to question the judgment because it had failed in its proof as to the measure of damage. The record was unnecessarily protracted by the effort to prove the extent of the damage suffered by Mr. Coleman. The plaintiff could, by a few simple questions, have met the requisites of proof as to the measure of damage, although the cost of repairs, labor, etc., which would have been expended on the car was properly accepted in evidence because it had some relationship to the extent of the damage.

**American Gypsum Co. v Lake Shore & Michigan R. R., 7 Oh Ap 145.**
**Ford Motor Company v Potomac Insurance Co., 27 Oh Ap 279.**

However, the damage of the plaintiff could fairly have been assessed at the amount fixed in the amended statement of claim for the reason that the witness from the S. W. S. Company who testified as to the damage had the itemized account of labor, parts and expense which it had submitted to Mr. Coleman as the cost to him to have his car properly repaired. This witness said that when and if all of the items set forth in this account had been put upon the stolen Chevrolet, it then would not be as good a car as it was when it was stolen. If this is true, and it is undisputed, then the damage was clearly, at least, the full amount for which judgment was prayed. All of the testimony to effect that S. W. S., which took the car over by a trade with Mr. Coleman, did not put in all the parts, furnish all the labor on the stolen car and pay full retail price, as quoted to Mr. Coleman, had no part in the testimony except as it would reflect upon the reasonableness of the original quotation of costs. The itemization furnished Mr.

Coleman was to repair the car in a manner satisfactory to him and to restore it to a condition as nearly as possible like it was at the time it was stolen. After all, the cost of such repair represented the damage to Mr. Coleman and the fact that S. W. S. Company, which afterwards acquired the car, did not see fit, for its purposes, to repair it to the extent that it intended to do had Mr. Coleman retained it in no wise minimized the damage which Coleman suffered.

Upon a fair consideration of this record in its entirety and the decision of the trial judge, considered as separate findings of fact and law, and particularly in the light of what is not therein found, we are required to affirm the judgment.

BARNES, J., concurs.
GEIGER, J., dissents.

## APPLICATION FOR REHEARING

No 1546. Decided June 21, 1939

BY THE COURT:
Submitted on application of appellant for rehearing.

The application is somewhat extended and, in considerable part, discusses questions which we have fully and completely considered in our original opinion. As to them we will say nothing more.

Respecting the contract between the parties, it may be said that there was an issue in the pleadings as to what this contract was and there was a substantial issue of fact on the record upon this question. The trial judge could well have found that, without respect to the original contract of bailment, between the parties, there had been considerable modification therein by reason of subsequent conduct and direction of Mr. Coleman. There is serious doubt indeed if the record will support the original averment of the petition that "his (plaintiff's) car was to be delivered to himself or to persons positively identified and authorized by him to receive said car upon demand". Certainly we pronounced no principle of law that the servant could vary or modify the terms of the contract between itself and the master.

We have been somewhat concerned about the statement of counsel for appellant at page 3 of his brief on the application for rehearing, wherein it is said:

"This Court has seen fit to treat the decision of the trial court as a separate finding on law and fact when the record does not disclose that that was the purpose."

In our opinion on this subject matter we said:

"The trial judge held with the defendant and rendered a written opinion which is made a part of the Bill of Exceptions.

In the transcript of docket and journal entries, we find an entry stating that the Court's decision of special findings of law and fact, rendered December 24, 1936, is ordered made a part of the record and Bill of Exceptions in above entitled case. In fairness to the trial judge, it should be said that the decision was not prepared upon any request for special findings of law and fact. It is incomplete as to findings of fact. Insofar as it determines facts, we will, in view of the entry, accept them."

We have again examined the record and are satisfied that our statement, heretofore quoted, is correct. The entry which purports to embody in the decision special finding of law and fact is approved by the trial judge, by counsel for both parties and exceptions are noted by the defendant. It is only reasonable to assume that this entry is responsive to the desire of counsel for plaintiff, appellant probably expressed after the written decision was handed down. Counsel had the right to make this request for special finding of law and fact at any time prior to the final entry. Not only did he have a right to make this request, but he had the fur-

ther right to insist that the finding be complete. This reviewing court has a right to assume that inasmuch as nothing other or further than appears in the written decision was proffered or suggested by counsel for appellant that the decision was complete in the judgment of said counsel. Not only does the entry appear, but pursuant thereto the decision is carried in the Bill of Exceptions. It is evident, however, that without this special finding of fact, counsel for appellant would have no basis whatever for reversing the judgment because in this statement of law and fact is found the rule of law which the court applied and to which the assignments of error of appellant are principally directed. Without this finding we would have nothing but a general verdict and judgment and no means of determining that the trial judge applied anything but the correct principle of law to the facts appearing.

We discussed the application of the presumptive rule as applied to this case and quoted the trial judge with particular reference thereto.

We have again examined the record, briefs and our former opinion and find no sufficient reason to grant the rehearing.

Application denied.

HORNBECK, PJ. & BARNES, J., concur.