Farm Bureau Mutual Automobile Ins. Co., Appellant, *v.* The Alms & Doepke Co., Appellee.

(No. 6422—Decided October 16, 1944.)

*Messrs. Pogue, Helmholz, Culbertson & French,* for appellant.

*Mr. Clarence M. Smith,* for appellee.

Matthews, J. The plaintiff issued an insurance policy to one Ayers, insuring him against theft of and damage to his automobile. This automobile was parked on the defendant's parking lot from which it was stolen and damaged by the thief before it was recovered. The plaintiff paid the insured the amount of the damage and this action was brought as assignee or subrogee to recover from the defendant the amount so paid. A jury was waived. The court, as trier of the facts,

made a finding in favor of the defendant. The plaintiff's motion for a new trial was overruled and judgment rendered on the finding in favor of the defendant. It is from that judgment that this appeal was taken.

The defendant operated a large department store and, in that connection and primarily to serve patrons of the store, operated a parking lot just north of the store. This lot had a frontage of almost 200 feet on Sycamore street, on the east, and was about 160 feet deep on the north and 101 feet deep on the south. Around these three sides was a concrete wall or curb high enough to prevent automobiles from passing, but which an adult could step over. There were two openings in this curb, one 36 feet wide on Sycamore street, for both entrance and exit, and one on the south side for exit only. There were buildings on the west side which prevented ingress and egress.

The automobiles were so parked that any automobile could be reached and operated to either exit without shifting others.

The lot was in charge of a manager and an assistant. The customer, upon entering, was charged 15 cents and given a ticket which could be used at the store as the equivalent of that much money, and, the ticket entitled him to park for two hours. If he allowed his automobile to remain longer than that he was charged an additional 15 cents.

Customers could either park their own automobiles, lock them and keep possession of the keys, or they could have an attendant park the automobile and either leave the keys in the automobile or take them away. The defendant preferred to have the keys left, but there was no rule and no uniform practice. The defendant did make a practice of giving a parking ticket which it took up as the automobile was driven out, and at the same time collected for any overtime.

The insured's mother, who parked this automobile on the day in question, had been a frequent customer and knew the physical conditions and in a general way how the lot was run. On that day, about 1:00 p. m., she entered the lot, paid 15 cents, was given a ticket, and an attendant took the automobile and parked it next to the south line and facing Sycamore street. When she returned to get the automobile about four hours later, it was discovered that it was not on the lot. While she was absent, the attendants had noticed an automobile leaving the lot and they had tried to stop it to get the ticket and pay for any overtime, but the driver disregarded them and drove away. They did not know whose automobile it was or whether the driver was the person who had parked it, but presumed it was the owner who had taken it away. When it was discovered that the insured's automobile was not on the lot and that Mrs. Ayers had not taken it away, the conclusion was reached that it was this automobile whose driver had failed to surrender his ticket. This conclusion was confirmed by the discovery of the wrecked automobile a short time thereafter.

In his decision, which was accepted by the parties as a finding of facts and journalized as such, the judge stated the issues, analyzed the evidence, quoted from certain Ohio cases the applicable law as he conceived it to be, and concluded that:

"In the case now being considered by the court, when the plaintiff proved that its insured delivered his automobile to the defendant and paid a fee for the storage of his automobile, the defendant became a bailee for hire, and when the defendant upon demand was unable to deliver the automobile to the insured's agent, a *prima facie* case was established in favor of the owner of the car. The burden was then cast upon the defendant to go forward with its evidence and show that

its failure to deliver the car was due to other causes consistent with due care on its part.

"The court believes that the defendant has overcome this presumption by showing that the theft of the assured's car was not inconsistent with due care on its (the defendant's) part.

"Having presented evidence to counterbalance the *prima facie* case in favor of the assured, the burden is still upon the assured, and the plaintiff in this case, to prove, as alleged in the plaintiff's petition, 'that on December 19, 1942, after the car had been delivered to the defendant for safe keeping, the defendant negligently and carelessly lost the custody of the car of the assured.

"The court believes, and hereby finds, that the plaintiff has not sustained its burden of proving that the loss of and damage to its assured's automobile resulted from negligence on the part of the bailee defendant."

It is now claimed that the court placed too great a burden upon the plaintiff in this statement and that the judgment should be reversed for that reason. Before considering this contention, it should be noted that the court properly stated that the issue was whether the defendant had exercised due care, and that the evidence was such that reasonable minds could reach different conclusions on that subject.

It is conceded by the plaintiff that failure of defendant to exercise reasonable care was an essential element of its case, but it is contended that when it proved the parking of the automobile and the failure of the defendant to redeliver upon demand, a *prima facie* case was established, and thereupon the burden of overcoming that *prima facie* case was cast upon the defendant. In other words, it contends that the bur-

den of proof shifted and from that point on, the defendant must take the risk of nonpersuasion.

While there is uncertainty and perhaps conflict in other jurisdictions, the rule in Ohio is clear that the burden of persuasion never shifts during the trial of a case. As fixed by the pleadings and the law, the burden of proof remains constant throughout. 17 Ohio Jurisprudence, 140, Section 112. The establishment of a *prima facie* case by evidence, by an inference or presumption, does not cause the burden of proving to shift. 17 Ohio Jurisprudence, 144, Section 115. Of course, the actual establishment of a *prima facie* case would require the adverse party to destroy it by counter evidence of equal weight, but it would not require him to assume the burden of proving any issue. That is the Ohio rule in all classes of cases, including cases involving bailments. 5 Ohio Jurisprudence, 124, Section 30.

In the absence of any Supreme Court decision on the duty owing by a parking lot operator to the customer, the trial court followed *Blackburn* v. *Norris,* 46 Ohio App., 469, 189 N. E., 262, and *North River Ins. Co. of New York* v. *Ohmer,* 63 Ohio App., 346, 26 N. E. (2d), 767, in which the rule was applied to the bailment arising by the leaving of an automobile for repairs in one case and storage in the other. We think the trial court was correct in construing those cases and that such construction makes them conform to the Ohio rule that the burden of proof as fixed by the pleadings and law never shifts.

Counsel for plaintiff cite *Oskamp, Nolting & Co.* v. *Southern Express Co.,* 61 Ohio St., 341, 56 N. E., 13, and *Savin* v. *Butler,* 19 Ohio App., 68, as holding that the burden of proof is on the bailee. The first case was a common carrier case in which the defendant was an insurer with certain exceptions. All the case holds is

that the burden was on the carrier to bring itself within the exception, which is the general rule. There was no question of the shifting of the burden of proof raised or discussed. The facts in the *Savin case* are not stated in detail, but it appears that jewelry was left with a pawn broker as security for a loan under a written contract, in which the bailee expressly exempted himself from liability for loss by fire or burglary. The jewelry was taken from the bailee by robbers. From the cases cited in the *Savin case* (*Davidson.* v. *Graham,* 2 Ohio St., 131, and *T. & O. C. Ry. Co.* v. *Ambach,* 10 C. C., 490, 6 C. D., 574) in support of its conclusion, we infer that the court considered it a case in which the defendant was relying upon an exception to an otherwise general liability and required him to show that he came within the exception and, of course, without fault or connivance on his part.

Our conclusion is, that the trial court applied the correct rule of law. The evidence is such that it could be reasonably inferred that the defendant exercised reasonable care and that the automobile was stolen from the lot notwithstanding. We, therefore, cannot say that the court erred in holding that the plaintiff had failed to sustain the burden of proof.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross, P. J., and HILDEBRANT, J., concur in the syllabus and opinion.