## PALLOTTO, Plaintiff-Appellant, v. HANNA PARKING GARAGE CO., Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20222.    Decided April 1, 1946.

William H. Chapman, Cleveland, for plaintiff-appellant.
Ben B. Goldman, Cleveland, for defendant-appellee.

### OPINION

By MORGAN, J.

Nick Pallotto brought this action in the Municipal Court of the City of Cleveland against The Hanna Parking Garage Company to recover $599.20 with interest from June 5, 1943.

The plaintiff alleged in his petition that the defendant is a corporation operating a parking lot at 1600 Euclid Avenue, Cleveland, Ohio; that on June 8, 1943, at about 9:05 P. M. plaintiff delivered to defendant at said parking lot his two-door Buick automobile containing valuable personal property and for a consideration paid to defendant the latter agreed to re-

deliver said car and contents to the plaintiff on demand and the presentation of the identification receipt given plaintiff when he left his Buick automobile with the defendant.

On delivering his car to the defendant, the plaintiff notified defendant's manager in charge of said parking lot of the valuable contents of the car and requested permission to lock the car, but the manager refused such permission. At about 11:30 P. M. on the same day, plaintiff gave to defendant the identification receipt for the car and demanded redelivery of the car and the contents. The defendant failed and refused so to do.

On or about July 3, 1943, plaintiff recovered possession of the automobile but certain articles enumerated in the petition which were in the car when it was delivered to defendant, of the value of $599.20, had been removed and stolen, for which amount with interest plaintiff asks for judgment.

The answer admits the operation of the parking lot by the defendant; admits that "at or about the time alleged in the petition the plaintiff drove his automobile into the parking lot aforesaid and requested permission to lock the same and that said permission was refused." That the attendant of the parking lot "specifically called plaintiff's attention to the matter printed on the parking ticket absolving the defendant from liability; and after said attendant verbally informed the plaintiff that the defendant did not assume any responsibility for the contents of the car, which plaintiff stated consisted of the change of clothing and small tools, the plaintiff nevertheless paid the usual and customary charge for the parking of an automobile and left said automobile on the premises of the defendant."

The answer admitted that the automobile was not found on the parking lot at the time the plaintiff called for the same.

In his reply the plaintiff denied that his attention was called to the printed matter on the parking ticket absolving the defendant from liability and denied that he assented or agreed to any such provision and stated that the provision attempting to absolve the defendant from all liability "is void and of no effect because contrary to law and public policy and attempts to relieve the defendant as a bailee from negligence."

Plaintiff further denied that the attendant or any other employee of the defendant, informed him that the defendant did not assume any responsibility for the contents of the car.

20

The case was tried to the court who rendered a judgment for the defendant. On request, the court also made a separate finding of facts and conclusions of law as follows:

"1. Defendant is engaged in the operation of an open-air automobile parking lot; that the handling of personal property is not an incident of said business.

2. That on the 8th day of June, 1943, plaintiff drove his automobile into the parking lot of the defendant, advised the attendant that the automobile contained some personal property and offered the automobile for parking.

3. That by special contract, before the automobile was accepted for parking, before any fee was paid, and after being advised by the attendant that the defendant did not accept any articles for safekeeping and that he had no authority to receive articles for safekeeping, plaintiff left his automobile and expressly released the defendant from any and all liability in connection with the contents of said automobile.

4. That the loss of the automobile is not involved in this action."

"CONCLUSIONS OF LAW.

1. The court finds that a bailment relationship may be created only by virtue of an express or implied contract; by special contract the parties to a bailment may reduce the liability of the bailee, and even relieve him of liability altogether, on the principle, that in general, he need not accept any bailment, except upon his own terms. That where the evidence, as in this case, clearly shows an agreement, the defendant is not liable.

2. There is no ground for holding the defendant liable for the loss of articles which the attendant had no authority to receive. That where the evidence as in this case, clearly shows that the attendant notified the plaintiff, that he had no authority to receive the articles, the defendant is not liable.

3. That the personal property was not an incident to the bailment of the car and was not an incident to the business of the defendant. That where the evidence, as in this case, clearly shows that the business of the defendant was the operation of an open air parking lot, and that the handling of personal property is not an incident to said business, the defendant is not liable."

Paragraph 1 of the above Conclusions of Law is clearly erroneous. It is not true that "the parties to a bailment may

reduce the liability of the bailee and even relieve him of liability altogther."

In **Insurance Company v Constantine, 144 Oh St, 275,** the court said, at page 283:

"It is now apparently well settled that a bailee for hire cannot by contract exempt himself from liability for his own negligence or that of his agents or servants * * * *. Contracts limiting liability for negligence in bailments for hire, in the course of a general dealing with the public, are generally regarded as against public policy."

Paragraph 2 of the Conclusions of Law, states:

"2. The evidence * * * clearly shows that the attendant notified the plaintiff that he had no authority to receive the articles"

and that therefore the defendant is not liable in this case.

Merle Stephens, the attendant who received the automobile from plaintiff, did not testify in person at the trial or by deposition.

The supervisor of the parking lot at the time the plaintiff parked his car, was Roy Glass. He testified at the trial as follows:

"Q.  Merle Stephens?
A.  He works for the railroad company.
Q. Do you know where?
A.  B. & O. Big Four, New York Central."

While the record does not disclose the reason why the deposition of Stephens could not have been taken, plaintiff's counsel waived objections to the admissibility of the affidavit insofar as the statements therein contained were competent evidence.

The affidavit by Stephens was subscribed and sworn to on June 29, 1943. With reference to what was said and done when the car was parked, Stephens states in his affidavit:

"* * * I walked up to the car and as I did so Pallotto got out of his car and a man and a boy also got out, and the following conversation took place between Pallotto and myself—he said, 'can I lock my car?' and I told him that there were no locked-car spaces available. He said he

had a change of clothing and some working tools in the car and he would not want to have anyone take them out of the car as he just got in from Salt Lake City. He then asked whether it would be safe to leave the clothing and tools in the car, and I told him that I thought everything would be all right and that we were not responsible for articles left in a car, and handed him a parking check and told him to read it before he offered the usual parking fee—He looked at the ticket and gave me 35c which is the regular parking fee for automobile, and he said 'I will take a chance and leave it.' He did not pay more than the regular parking fee, and I did not agree to assume any responsibility as to the contents of the car, since I had been repeatedly told by my superiors that the company does not accept any articles for safekeeping and I had repeatedly been told to so advise anyone offering a car for parking and I did so advise Pallotto. I did not see anyone near or tampering with the car and do not know what became of the same, except that the car was not on the lot when Pallotto called for the same."

The plaintiff, Pallotto, testified that he asked the attendant "whether or not I could park my car and lock it?" The attendant answered, "Well, it couldn't very well be done that night for the simple reason that they were rather crowded. They would have to be moving cars in and out of the parking lot. I said to him that he should lock the car and in turn put the keys in his pocket. * * *." To which the attendant replied, "You don't have to worry. We take care of them. We will see that everything is all right."

As to his reasons for wanting to lock the car, plaintiff testified:

" I told him I wanted to lock the car because I had a lot of stuff sitting on the back seat, a lot of belongings and a lot of clothing and stuff, personal belongings. I wanted to make sure that they were taken care of."

The plaintiff testified that he then gave the attendant 35c which was the parking charge and the attendant gave him a ticket.

On cross-examination the plaintiff testified:

"Q. Did he, the attendant, tell you that they were not responsible for articles left in the car?

A. No.

\* \* \*

Q. When the boy handed you the ticket, did you look at the ticket at all?

A. Yes.

Q. Did you read anything on it?

A. No.

Q. You didn't read it?

A. No.

Q. He just handed you a ticket. Did he ask you to read it?

A. No.

Q. He did not?

A. No.

Q. And you didn't read it?

A. No."

Benedict Favorito, was in the car with plaintiff when it was parked and he overheard the conversation between the plaintiff and the attendant. As to this conversation Favorito testified as follows:

"Palloto told the attendant, 'I want to park this car. At the same time I park it I want to lock it up because I have valuable belongings in this car. \* \* \*.' The attendant said, 'We can't keep the car locked because we have to keep moving the cars back and forth. We have people here keeping their eye on the parking to see that the right cars go out.' Pallotto then said to the attendant, 'Lock the car up and put the keys in your pocket. When you want to get to the car why you can open up the car and move it where you want it.' To this the attendant replied, 'He ain't got time to bother around like that.' "

On cross-examination the witness, Favorito, was asked whether the plaintiff said anything to the attendant about what was in the car. The witness answered:

"Why he mentioned that he has a structural belt in there and his clothing and the baby clothes."

On cross-axamination he continued,

"Q. When the attendant told Palloto that he couldn't lock his car, did the attendant say anything to Palloto about the company not being liable for the contents of the car?

A. He didn't say that. He said, 'all you have to do is leave the car here. We have people in the yard who will watch out for the car.'

Q. Did the parking attendant hand Pallotto a parking ticket or parking receipt and ask him to read it?

A. No. He didn't say to read it.

Q. Did he hand him one?

A. He handed him a ticket."

As to the instructions given the attendant, Glass, the supervisor of the parking lot testified as follows:

"Q. Did you in employing Merle Stephens as an attendant for the Hanna Parking Company, issue any instructions to him regarding any personal property which may be offered for parking on any lot operated by the company?

THE COURT: That may be answered yes or not. The objection will be overruled.

A. Yes sir.

Q. Now what did you instruct him?

MR. CHAPMAN: Objection.

THE COURT: Overruled. You may answer.

Q. Go ahead and answer.

A. Instructed the man—

Q. Let's hear you.

A. Instructed the man we were responsible for the automobile and not its contents, which every employee knows.

THE COURT: That may be stricken. The latter portion may be stricken.

Q. Did you instruct him not to accept any personal property for storing or parking on the lot?

A. No sir."

Accordingly, the plaintiff and defendant's witnesses are agreed that the plaintiff asked to lock his car because of its contents and that the attendant refused. There is a square conflict in the evidence as to the subsequent conversation between the plaintiff and the attendant.

In his Finding of Facts and Conclusions of Law the trial court accepted as true the version of the conversation given by Stephens in his affidavit. Ordinarily this Court will hesitate to set aside or refuse to follow a Finding of Fact made by a trial court who had the opportunity to see and to hear the witnesses. In this case, however, the trial court did not see or hear Stephens as a witness and for this reason we deem

it our right and duty to examine the affidavit carefully for such light as it may furnish as to its truth or falsity.

The affidavit of Stephens stated that "I had been repeatedly told by my supervisors that the company does not accept any articles for safekeeping and I had repeatedly been told to so advise anyone offering a car for parking." That Stephens advised everyone offering a car for parking that "the company does not accept any articles for safekeeping" is simply unbelievable. Anyone having experience in parking his car knows that seldom, if ever, does a parking lot attendant make it a point to state that the owner of the parking lot "does not accept any articles for safekeeping." Furthermore, the statement in the affidavit that Stephens had been "repeatedly told by my superiors that the company does not accept any articles for safekeeping" is directly contrary to the evidence of the supervisor, Glass, when he testified.

"Q. Did you instruct him (the attendant) not to accept any personal property for storing or parking on the lot?
A. No, sir."

This parking lot, on the evening the plaintiff parked his car, was in charge of the superivisor and six attendants. It was conceded that the plaintiff did not park his own car but was asked to turn it over and did turn it over to the attendant. When the plaintiff called for his car he delivered his identification check to the attendant who then proceeded to hunt for the car. The attendant failed to locate the car in the parking lot and then used the telephone. The plaintiff overheard the conversation when the attendant said to a person at the other end of the telephone, "we have another one missing."

While the waiver of objection by plaintiff's counsel made admissible in evidence the statements in Stephens' affidavit as to the conversation between him and the plaintiff when the car was parked, this fact does not mean that such an affidavit is to be given equal weight and credence with evidence of witnesses who appeared at the the trial and whose evidence was subjected to the test of cross-examination.

It is our conclusion that the statement in the Finding of Facts that the plaintiff was told by the attendant "that he had no authority to recieve articles for safekeeping" is not only contrary to the weight of the evidence but is not supported by the evidence. The trial court made no finding that the plaintiff was told by the attendant to read the conditions on

the identification ticket. It is our opinion that the claim that the attendant so advised the plaintiff is also not supported by the evidence.

The plaintiff testified that when he called at the parking lot to get his car later in the evening, he turned over the identification ticket to the parking lot attendant. This ticket was not returned to him. The ticket was not offered in evidence in the case.

The liability of an owner of a parking lot for the contents of a parked car is treated in a recent well considered West Virginia case—Barnette v Casey, (1942) 124 W. Va. 143, 19 S. E. (2d) 621. In this case the plaintiff parked his automobile with the defendant. The rear compartment of the automobile contained baggage and wearing apparel, the cost price of which was $297.95. This property was not returned to the plaintiff and he brought an action in damages for its loss. The jury returned a verdict of $170.00. The supreme court of West Virginia reversed the judgment and said (page 623):

"There is no evidence in this case that the defendant bailee had any notice or knowledge of the two pieces of baggage or the property contained therein, which were left in the rear or baggage compartment of the automobile, and this raises the question of whether in these circumstances there was in fact a bailment of this particular property. We must bear in mind that unless in a case where bailment is created by operation of law there must be a delivery of the property for safekeeping by the bailor and the acceptance thereof by the bailee. We do not think that in this instance the bailee was called upon to assume that there was any property in the automobile other than the tools, tires, etc., which might reasonably be expected to be carried therein."

Also on page 624:

"If the drivers of automobiles desire to hold keepers of parking lots and garages liable for property left in automobiles committed to their charge, the party to whom the car is so committed should be notified of any concealed baggage. If such baggage is in plain view no such notice is required, because when in plain view it is treated as a part of the property accepted for safekeeping." See also:

Rogers v Murch, 253 Mass. 467.
D. A. Schulte Inc v N. Terminal Garage, 291 Mass. 251.

Bertig v Norman, 101 Ark 75.
Willis v Janson, 82 Utah 148.
Berry Automobiles, 7th Ed. Vol. 5 Pocket Part page 351.
6 Amer. Juris. 190, 191.
8 C. J. S. Bailments, §15, page 249.

It is admitted in this case that the plaintiff paid thirty-five cents to the attendant which was the usual charge for parking a car. It might be urged that even if there was a bailment of the goods of which the owner of the parking lot had notice, the parking lot owner would be only a gratuitous bailee. There is a dictum in 291 Mass. 251 to the effect that in such a case "the defendant's duty with reference to the merchandise would rise no higher than that of a gratuitous bailee." And, as is well recognized, "a gratuitous bailee is liable only for gross negligence or bad faith." The above Massachusetts case, however, was decided on the ground that "there was no delivery of the merchandise in the truck to the defendant or any acceptance of such merchandise by it," as the defendant did not know that the truck contained any merchandise.

If the defendant had had such notice, as in the instant case, it is our opinion that where the defendant paid the regular charge for the storage of an automobile, this charge would cover the bailment of the contents of the car of which the defendant had notice, as well as the car itself.

It is our opinion, therefore, that in the instant case the defendant was an ordinary bailee for hire and not merely a gratuitous bailee.

In the case of Insurance Co. v Constantine, supra, the 4th and 5th paragraphs of the syllabus are as follows:

"4. In an action by a bailor against a bailee based upon a breach of the contract of bailment, where the bailor proves delivery of the bailed property and the failure of the bailee to redeliver upon legal demand therefor, a prima facie case of want of due care is thereby established and the burden of going forward with the evidence shifts to the bailee to explain his failure to redeliver."

"5. Where the bailee proves loss of the property by theft, but attempts no explanation of the circumstances and offers no proof of facts from which an inference of due care may be drawn, he does not thereby rebut the presumption of negligence or want of due care arising from his failure to redeliver."

The defendant, Hanna Parking Garage Co., in this case offered no evidence whatsoever to explain its failure to redeliver the automobile and its known contents. It therefore wholly failed to rebut the presumption of negligence and want of due care arising from its failure to redeliver.

This case is therefore reversed and remanded to the trial court with instructions to determine the fair and reasonable value of the goods and articles whose presence in the automobile were disclosed to defendant's attendant at the time the car was parked by plaintiff and which were not returned to him and that judgment be rendered for plaintiff for the amount so found.

There is evidence in the case that the car contained other property whose presence was not disclosed and was not known to defendant. For the loss of such property, except for the loss of ordinary automobile accessories such as automobile tools, tires etc, the plaintiff will not be entitled to recover damages. A parking lot owner is as truly a bailee of such ordinary automobile accessories irrespective of notice as he is of the automobile itself. The plaintiff made no claim for damages to the automobile as it was covered by insurance. Judgment reversed and cause remanded.

SKEEL, P. J., and LIEGHLEY, J., concur.