EDWARDS *v.* CRESTMONT CADILLAC CORPORATION.

(No. 79 CI F5283—Decided December 10, 1979.)
Shaker Heights Municipal Court.

*Mr. Sheldon D. Schecter,* for plaintiff.
*Mr. Bruce P. Mandel,* for defendant.

ROCKER, J.    Plaintiff delivered her 1978 Cadillac automobile to the defendant on or about July 17, 1978 at approximately 11:30 a.m. for the purpose of changing of a tire and performing a wheel alignment.

The automobile was taken from her by a service order man at the entrance to the defendant's garage area after which she was instructed to wait in the outer lobby for the work to be completed.

Plaintiff had stated to the service order man that she and her family were packed and ready to leave on a vacation and, therefore, would appreciate prompt service.

The evidence established that at approximately 1:30 p.m., the tire repair department completed its work of mounting a new tire and returned the car to the service order man at his desk from where it was to be assigned to the wheel alignment department.

The evidence is unclear as to what occurred after the car was delivered to the service order man. What is clear is that at about 4:00 p.m. that afternoon, plaintiff was informed that her automobile was missing and appeared to have been stolen.

The fact that it was stolen was confirmed several days later when the car was recovered by police who found the vehicle damaged and stripped of numerous valuable parts.

Plaintiff brings this action to recover for the loss of use of the automobile during the period when it was being rehabilitated from the theft damage, also for loss of personal property belonging to herself, her minor son, and a minor grandson, and finally, for the cost of replacing door locks on her home and place of business since the keys for those places were on the same key ring taken with the car thus presenting a probable threat to the safety of her business and home.

At the close of plaintiff's case, a motion to direct a verdict by defendant was overruled with exception as directed toward the claim of plaintiff's grandson. The court directed its verdict in favor of defendant as to the grandson on the basis that plaintiff was under no obligation to support or furnish the personal belongings of the grandson and would thus not be a real party in interest as against the parent or parents of the grandson.

Defendant through numerous witnesses, most of them employees, demonstrated the measures taken to protect the property of its customers. Included among those measures were general supervision of the entire garage area by a designated employee stationed in a tower from which a clear view of the premises was available, the dispensing of a receipt form to be exhibited before any person would be permitted to remove an automobile from the premises, and a high fence with a locked gate to control exiting of vehicles.

One witness, a service director, who had many years of experience in the automobile business and had visited other dealers in various parts of the country, testified that the Crestmont security facilities were superior to others he had seen.

Another witness, who was an automobile dealer of broad experience, stated that his company did not exercise as much interest in security as did Crestmont. He also stated that when cars were in the garage for service, the keys to the vehicles were left in the ignition lock. This was similar to the practice at Crestmont and was done so that the cars could be moved to be worked upon and also as a safety measure in case fire would require removal of the cars.

In the light of the extensive security provisions described, no explanation was offered as to precisely how plaintiff's property was stolen. It was established that the theft occurred after the car was placed in front of the service order desk where three employees worked most of the time. The employee who brought the car to that desk testified that he turned the car over to one of the service desk personnel and specifically notified him of its presence so that he could direct it to the next operation.

Plaintiff could offer no evidence of what may have happened to the car inasmuch as she was in the dealer's showroom and not able to observe what was or was not being done. She imposed full and complete control over the vehicle to Crestmont.

With respect to the personal property allegedly lost with the car, it was, according to plaintiff, contained in the trunk compartment. No employee of Crestmont admitted any knowledge of its presence. Plaintiff did not, according to her testimony, specifically give notice to Crestmont of the presence of personal property in the trunk of the car. As noted above, she

simply stated that she was "packed and ready to leave on my vacation," or words to that effect.

Bailment is a relationship which is created by contract and although there are implied terms which the courts have imposed upon this class of contract, the creation or origin of the contract is not unlike that of any other contract. The same ingredients are basic in a bailment contract as in other contracts, such as a meeting of the minds of the parties, consideration, and other elements common to all contractual relationships.

Among the peculiarities regarding bailments as a result of judicial interpretation are the principles expressed in *Agricultural Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275, wherein the following is found, at pages 284 and 285:

"***[B]ailments rest upon contract, express or implied***."

"Where the bailee fails to redeliver the [bailed] property upon a legal demand therefor, a right to action [*ex contractu* or *ex delicto*] accrues in favor of the bailor."

"Upon the question of defendant's liability the plaintiff proved that the vehicle was delivered to defendant in good order at about 11:45 a.m. on the day in question and at about 2 p.m. on that same day the bailor returned and demanded the vehicle and it then developed that it was gone.

"The authorities are uniform in holding that proof of those facts makes out a *prima facie* case of liability *whether the action be based upon breach of contract or upon negligence***.*" (Emphasis added.)

The case of *Hanlon* v. *J. E. Miller Transfer & Storage Co.* (1948), 149 Ohio St. 387, affords a succinct description of the reason for the *prima facie* rule at pages 392-393, as follows:

"As observed in many of the reported cases, the obvious reason for the rule and the statute is that in such instances, with the property in the exclusive possession of the defendant, the plaintiff is at a disadvantage in obtaining information as to the cause of the loss, and hence the law considers that he makes a *prima facie* case of negligence by proof of the bailment and of the failure of the defendant to return the property on a proper demand."

Another well-accepted principle applicable to loss or

damage to property the subject of bailment is that upon establishment of a *prima-facie* case, there is an inference of negligence on the part of the bailee which requires that he go forward with evidence to at least counterbalance that inference arising from his failure to redeliver the bailed article.

In the case before this court, defendant was unable to present any proof whatsoever as to how the plaintiff's property was stolen. Despite numerous personnel in the service area, supervision in the watch tower, guards manning the exits, defendant could offer no explanation as to when and how the theft was committed.

In *North River Ins. Co.* v. *Ohmer* (1939), 63 Ohio App. 346, the court summarized the issue of burden of proof and burden of going forward in loss of bailed property, at pages 350-351, as follows:

"If we were required to formulate a rule controlling presumption and burden of proof, where the subject of bailment is an automobile, we would say that when the relationship of bailor and bailee appears, the property is shown to have been in the possession of the bailee under the contract and upon demand the bailee cannot produce the automobile, a presumption of negligence on the part of the bailee will properly arise and plaintiff would be entitled to recover for any damage shown *unless the bailee produces evidence of sufficient weight* to counterbalance the presumption against him and *that mere proof of theft* of the automobile from the property of the bailee will not, in and of itself, meet the presumption made by plaintiff's case." (Emphasis added.)

The first issue, then, to be decided by this court is whether defendant has met its burden of counterbalancing the inference of negligence.

Defendant relies most heavily upon the case of *Aetna Cas. & Sur. Co.* v. *Woody Sander Ford* (1969), 21 Ohio App. 2d 62, to support the theory that where the bailee provides care and protection commensurate with that of other automobile repair services in the community this constitutes sufficient cause to remove the inference of negligence.

The case, which shall be referred to as the *Woody Sander* case, involved circumstances and conditions considerably different from those before this court. Briefly, in *Woody Sander,* plaintiff's vehicle was used during the night to block

the exit of Sander's parking lot used for storage of cars being repaired or awaiting delivery. During the night, plaintiff's vehicle was stolen.

The court in *Woody Sander* found that it was a common practice among automobile dealers and garage keepers to protect the cars in the lot by placing a locked automobile across the exit drive. The court made no effort to determine whether this type of protection constituted a reasonable method of protection, but contented itself with the finding of due care by reason only of the fact that others in the community followed the same practice.

That finding by the Court of Appeals for Hamilton County was adverse to the finding of the Municipal Court of Hamilton County. Yet, it is this court's opinion that the enormous number of automobiles stolen each day and the fact that such thefts can be perpetrated within minutes and with great ease, justifies the taking of judicial notice that a locked automobile cannot be equated with a properly locked fence or building enclosure in providing security from theft.

The standard of care advanced in *Woody Sander* by the Court of Appeals is at considerable variance with modern theory of law on the subject, according to text found in 8 American Jurisprudence 2d 1090, Section 204, wherein the following is found:

"The modern theory, adopted by many courts and applied to bailees generally, is that there are no degrees of care or of negligence—that negligence is in all cases the same thing, namely, the absence of due care.*** Accordingly, the rule supported by many of the more recent authorities is that it is the duty of the bailee to exercise reasonable care, and what constitutes reasonable care will depend upon the nature, value, and quality of the subject of the bailment, the circumstances under which it is deposited, and sometimes, the character and confidence and particular dealings of the parties—in other words, upon the terms of the implied understanding of the bailee."

Having in mind the foregoing text, the appellate court in *Woody Sander* apparently concluded that implied within a contract of bailment of an automobile is a grant of power to use the automobile for special purposes of the bailee, such as using it to help protect the property of others who have

deposited automobiles with the same bailee, even though such use of the bailor's property exposes it to a greater risk of damage or loss. This court must reject that apparent conclusion despite the fact that other garages in the community also used their customer's cars to fill in gaps in their fences, a use for the exclusive benefit of the bailees.

The Cuyahoga County Court of Appeals in the case of *Pallotto* v. *Hanna Parking Garage Company* (1946), 46 Ohio Law Abs. 18, 68 N. E. 2d 170, also a case which involved the theft of an automobile, established something closer to what has become the modern standard of care with respect to bailments. The court therein, at page 28, stated:

"The defendant, Hanna Parking Garage Co., in this case offered no evidence whatsoever to explain its failure to redeliver the automobile and its known contents. It therefore wholly failed to rebut the presumption of negligence and want of due care arising from failure to redeliver."

While the *Hanna* case did not concern a situation precisely as that in the *Woody Sander* case with respect to blocking an exit with a customer's car, the recitation of facts by the Court of Appeals indicates that the procedures and operation of the Hanna Parking Garage were of a customary nature wherein a ticket receipt is issued for each car and must be presented before it is to be released. It is evident from the decision that no recognition was given to a theory that negligence was not present since the bailee followed a custom of the parking garage trade in protecting the bailor's property.

It is the opinion, then, of this court that due care is a term whose definition cannot be always expressed with exactness, but must vary with the conditions and circumstances of each case. This court cannot subscribe to the proposition that because others are more negligent in the care of bailed property, this, necessarily, establishes that due care was exercised by one less negligent.

Defendant, Crestmont Cadillac Co., did, the court finds, adopt numerous methods of controlling the security of vehicles entrusted to it, many of those methods surpassing and exceeding those used generally by other operators of similar businesses. Nevertheless, this court must make a finding as to whether under the conditions and circumstances of this case defendant exercised due care or was negligent.

This court, having heard details of each of the security measures, concludes that despite the various measures taken, defendant was negligent in the following particulars:

1. The person occupying the position in the watch tower failed to observe someone other than an employee or other authorized person removing the vehicle. There was no explanation given for this lapse; no evidence that any condition was present which would interfere with the watch tower attendant from properly performing his duty.

2. The plaintiff's car was delivered to the exclusive attention and care of a Crestmont service desk attendant who was aware of the identity of the owner and aware of the identity of authorized employees. This same individual was also aware of the fact that the keys to the ignition were in the vehicle thus making it readily accessible for theft.

3. The requirement of the city's fire department that customer cars must have in them the ignition keys imposes a higher degree of care for the safety of the vehicles.

4. Defendant's rule that restricted release of any car to only such for which a release slip was presented was disregarded since plaintiff had possession of such a slip which had not yet been validated.

5. Defendant failed to promptly deliver the car to the mechanic for continuation of the work ordered thus exposing the car to greater hazard of theft.

Next to be considered is the claim of plaintiff for alleged loss of personal articles consisting of various items of clothing and other property allegedly contained in the trunk section of the car.

Referring once more to *Pallotto* v. *Hanna Parking Garage Co., supra,* that case adequately covers two issues which have been raised herein: (1) requirement of notice of the presence of personal property beyond items ordinarily found in motor vehicle trunks such as spare tire, tools, etc., and (2) the effectiveness of an exemption from liability for loss by theft, fire, or other causes.

As stated earlier in this opinion, in the creation of a contract of bailment, as with other contracts, there must be a meeting of the minds as to the terms and conditions. The evidence in this case demonstrated that the plaintiff told one or possibly more persons employed at Crestmont Cadillac

that she was packed and ready to leave on her vacation and for that reason wanted her car serviced promptly.

There was no evidence to indicate that defendant was made aware of the nature, extent, or value of the contents in the automobile trunk. This court is of the opinion that in order to create a contract of bailment for plaintiff's personal property, she was required to clearly and expressly inform defendant not only of that term of the contract, but also the extent of its value to afford the bailee an opportunity to accept or reject the obligation.

Use of language such as "I am packed and ready to leave on my vacation," lacks the clarity of expression to find that defendant was thereby put on notice that secreted in the automobile trunk was personal property valued by plaintiff at over $2,500.

Defendant was, however, put on notice with respect to plaintiff's keys for her residence and place of business. Defendant needed, according to testimony, only the ignition key to perform the work ordered. Nevertheless, it took possession of a key ring holding numerous other keys and owed a duty upon demand to return them to the plaintiff.

The keys alone were of slight value, but since the owner's address was available on the ring, it was necessary that all the locks be changed to thwart the possibility of an illegal entry.

The court finds that upon defendant taking possession of the keys, it knew or should have known that a new hazard of loss was present. Plaintiff expended the sum of $323 for changes and new locks. Defendant contends that it is exempt from liability for this loss in view of plaintiff having affixed her signature to the order form which contained a notice of disclaimer for loss of personal property.

Again, reference is made to the case of *Pallotto* v. *Hanna Parking Garage Co., supra,* wherein disclaimers of liability for negligence of bailees are found to be against public policy. Cited with approval is the case of *Agricultural Insurance Company* v. *Constantine, supra,* wherein on the same point it was held, at page 283: "'It is now apparently well settled that a bailee for hire cannot, by contract, exempt himself from liability for his own negligence or that of his agents or servants.*** Contracts limiting liability for negligence in

bailments for hire in the course of general dealing with the public are generally regarded as against public policy.'"

It is the finding of this court that defendant, Crestmont, was a bailee for hire; the acceptance of possession and custody of the vehicle was an integral part of its business of selling automobile parts and services. Defendant cannot take possession of plaintiff's automobile in order to pursue its commercial enterprise and at the same time consider itself a gratuitous bailee.

Finally, the court considers plaintiff's claim for damages arising from cost of renting an automobile. The testimony revealed that defendant refused to provide transportation so that she could return to her residence on the day of the theft. Defendant likewise refused to provide an alternative form of transportation during a period of approximately two months during which it was repairing plaintiff's car following its recovery. Plaintiff was compelled, therefore, to rent an automobile for her business activity and for personal needs. She expended the total sum of $356.60 which the court finds reasonable and subject to recovery by plaintiff.

It is ordered, therefore, that judgment be entered in favor of plaintiff against defendant in the amount of $679.60, being the total of damages found by the court for changing of locks and for rental of an automobile. Court costs to be assessed to defendant.

*Judgment for plaintiff.*