TOMAS, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY et al., Appellees.

[Cite as *Tomas v. Nationwide Mut. Ins. Co.* (1992), 79 Ohio App.3d 624.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–95.

Decided July 9, 1992.

*Michael F. Colley Co., L.P.A., Michael F. Colley* and *David I. Shroyer;* and *Charles Boss,* for appellant.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Luis Alcalde,* for appellee Nationwide Mutual Insurance Company.

*Isaac, Brant, Ledman & Becker, J. Stephen Teetor* and *David G. Jennings,* for appellee Sims Brothers, Inc.

WHITESIDE, Judge.

Plaintiff-appellant, Deborah Tomas ("plaintiff"), appeals from a judgment of the Franklin County Court of Common Pleas granting the motions of defendants-appellees, Nationwide Mutual Insurance Company ("Nationwide") and Sims Brothers, Inc. ("Sims Brothers"), for summary judgment. Plaintiff raises four assignments of error, as follows:

1. "The Trial Court Erred To The Prejudice Of Plaintiff–Appellant Deborah Tomas In Rendering Summary Judgment In Favor of Defendant Sims Brothers, Inc. And Nationwide Insurance Company And Dismissing Her Action Against These Defendants."

2. "The Trial Court Erred To The Prejudice Of Plaintiff Deborah Tomas In Concluding That There Was 'Not A Scintilla Of Evidence That Plaintiff's Automobile Had Malfunctioned.' "

3. "The Trial Court Erred To The Prejudice Of Plaintiff Deborah Thomas [*sic*] In Concluding That There Was A 'Lack Of Any Notice To the Defendants To Expressly Hold The Vehicle For Inspection.' "

4. "The Trial Court Erred To The Prejudice Of Plaintiff–Appellant Deborah Tomas In Rendering Summary Judgment In Favor of Defendant Nationwide Insurance Co. And Dismissing Her Action Against That Defendant, Since Under The Facts Of This Case, Defendant Nationwide Was Not Entitled To Summary Judgment Under Civil Rule 56."

On April 23, 1988, plaintiff was seriously injured when the Chrysler LeBaron automobile she was operating went out of control, crossed over the median and struck an oncoming vehicle. Plaintiff contends that the collision was directly and proximately caused by a mechanical malfunction of her vehicle. Nationwide was plaintiff's insurer. By the facts of the accident, Nationwide caused the vehicle to be taken to Sims Brothers. Sims Brothers operates an automobile salvage yard. Nationwide's agent testified that he discussed the matter with plaintiff's father, who raised a question whether a malfunction of the vehicle caused the accident. Accordingly, Nationwide agents instructed Sims Brothers to preserve the automobile and hold it for settlement purposes. Despite Nationwide's instruction and despite the lack of any indication of transfer of title to it, Sims Brothers immediately tore down and removed (and apparently sold) many of the front-end parts of the vehicle, including the steering and suspension mechanisms. In any event, these parts became unavailable for inspection within a few days after Sims received possession (but not an interest in) the vehicle. There is no suggestion or claim that plaintiff herself ever authorized either Nationwide or Sims Brothers to dispose

of the vehicle in any way and, likewise, there is no indication that her father made such an authorization, even assuming that he was her agent.

Plaintiff contends that, as a result of Sims Brothers' unauthorized conduct in disassembling the steering assembly, she was unable to have such vehicle inspected by an expert to determine whether or not a malfunction of the steering assembly or some other part of the vehicle was the cause of the crash in which she was seriously injured. Plaintiff further contends that, as a result of this destruction of crucial evidence, she was unable to maintain a claim for her personal injuries resulting from the crash in a products liability claim against the persons or entities responsible for such malfunction or defect. She also refers to her inability to defend an action brought against her by the occupants of the vehicle which her LeBaron struck. Presumably, Nationwide was also her liability insurer and would defend any such action on her behalf.

Although four assignments of error are raised, essentially two main issues are presented. The first issue is whether a person may maintain an action for negligent destruction (or spoliation) of evidence, and the second issue is, assuming such an action can be maintained, is there an evidentiary basis for plaintiff's maintaining such an action against either defendant Nationwide or defendant Sims Brothers.

Although the parties in their argument discussed the law of agency and the law of negligence, the situation here is essentially a bailment, with the responsibilities and duties being that of a bailee to a bailor. In other words, Nationwide gained possession of plaintiff's vehicle but did not have title, and there was no agreement between the parties as to when or if title would be transferred to Nationwide in exchange for payment of some sum of money in settlement of an insurance claim. Several depositions were submitted in support of and in opposition to the motions for summary judgment, including the deposition of Nationwide's claim adjustor. He conceded that no settlement of the claim had been made, and title had not been transferred at the time that he caused the vehicle to be picked up by Sims Brothers to hold in order to minimize storage charges Nationwide might be required to pay under its policy with plaintiff. Plaintiff submitted an affidavit and testified that she gave no one authority to remove, discard, sell, or otherwise displace any of the parts of her automobile.

A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when this special purpose is accomplished or retained until the bailor reclaims the property. The duty of the bailee is to hold the property in accordance with the terms of the bailment.

Bailment involves the transfer of a possessory interest only and not an ownership interest in property. A bailment may be for the benefit of only the bailor or bailee, or for the mutual benefit of both. We would assume that, in this instance, the bailment was for mutual benefit. If the bailee causes or permits the property to be destroyed or damaged, this constitutes a conversion of the property to the bailee's own use. Accordingly, since Nationwide was the bailee of the property, with duties toward the bailor, plaintiff, it cannot avoid its duty to the bailor, plaintiff, by creation of the new bailment between it and Sims Brothers, where Nationwide was the bailor and Sims Brothers the bailee. As stated in paragraph two of the syllabus of *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 29 O.O. 426, 58 N.E.2d 658, the failure of a bailee to redeliver the bailed property to the bailor upon legal demand creates a cause of action either in contract or in tort, either of which may be pursued at the election of the bailor. The same is true when the bailed property is returned in a damaged condition. Although proof that bailed property was returned in a damaged condition may constitute *prima facie* evidence of negligence or want of due care on the part of the bailee, the burden of proof remains upon the bailor to prove negligence, even though the burden of going forward with the evidence to explain the failure to redeliver shifts to the bailee. See *Riggs v. Taylor* (1958), 168 Ohio St. 276, 6 O.O.2d 483, 154 N.E.2d 145; *Agricultural Ins. Co., supra,* and *Midwestern Indemn. Co. v. Winkaus* (1987), 42 Ohio App.3d 235, 538 N.E.2d 415.

■ Accordingly, the evidence herein establishes a duty of both Nationwide and Sims Brothers to plaintiff with respect to the automobile in question to hold it in its condition when delivered to each, as well as damage to the property by virtue of certain parts being removed by Sims Brothers without authorization. This establishes a *prima facie* case of negligence against each, and the excuse that Sims Brothers mistakenly (without either express authority or an ownership interest) removed certain parts from the vehicle would not seem to constitute a justification for the damage to the vehicle.

Nevertheless, this case turns not upon whether or not there is evidence of a duty to plaintiff, nor even if there is a negligent failure to fulfill that duty, since plaintiff does not seek to recover the difference in market value of the vehicle with and without the removed parts but, instead, seeks to recover claimed consequential damages, consisting of the damages she would have recovered from the tortfeasor, who allegedly delivered defectively designed parts or negligently repaired the vehicle, causing the steering mechanism to malfunction, with plaintiff being unable to control the vehicle. This contention, however, is complicated by the fact that plaintiff has amnesia and cannot remember how the accident occurred, except that she was driving on U.S.

Route 23 heading south, with a vague recollection of the movement of her automobile a "quivering kind of movement of the car being manipulated by the wind." She had had no previous problems with the steering of the automobile, except that it had been in a previous accident, resulting in a part of the body near one of the wheels being bent and rubbing against the wheel.

Here, plaintiff seeks to have this court recognize what she terms a claim for negligent "spoliation of evidence" as a separate and distinct tort. A related tort, "intentional spoliation of evidence," is the subject of an annotation in 70 A.L.R.4th 984 (1989), Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, As Actional. In the annotated case, *Koplin v. Rosel Well Perforators, Inc.* (1987), 241 Kan. 206, 734 P.2d 1177, 70 A.L.R.4th 973, the court stated at 208–209, 734 P.2d at 1179, 70 A.L.R.4th at 977:

"More states have been faced with cases involving the negligent destruction of evidence than cases involving the intentional destruction of evidence. When negligence is the basis of the suit alleging an economic injury resulting from the destruction of evidence, a duty on behalf of the defendant arising from the relationship between the parties or some other special circumstance must exist in order for the cause of action to survive. In *Bondu v. Gurvich*, 473 So.2d 1307 (Fla.Dist.App.1984), a hospital had failed to preserve certain medical records pertaining to plaintiff. As a result, plaintiff lost a medical malpractice lawsuit against certain physicians because, in the absence of the hospital records, plaintiff was unable to obtain an expert witness * * *."

The Kansas court continued at 241 Kan. at 210–211, 734 P.2d at 1180–1181, 70 A.L.R.4th at 979, stating:

"Only two courts have recognized the tort of *intentional* interference with a prospective civil action by spoliation of evidence. In *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984), the plaintiff was injured when the rear wheel and tire flew off a van and crashed into plaintiff's windshield. Immediately after the accident, the van was towed to Abbott Ford, Inc. * * * Within a few days following the accident, Abbott Ford agreed with Smith's counsel to preserve the physical evidence, consisting of certain automobile parts, for later use in a possible action against Abbott Ford and/or others. The evidence was subsequently lost or destroyed making it impossible for Smith to pursue her claim. * * * '[P]robable expectancies' have been recognized by California case law dealing with the interference with prospective business advantage * * *. The court found that a prospective civil action in a product liability case is also a 'probable expectancy' to be protected from interference. * * * "

The Kansas court then reviewed several cases, which it stated indicated that even the tort of intentional interference with prospective civil actions by the

spoliation of evidence would not be recognized in the absence of some independent tort, contract, agreement, voluntary assumption of duty, or special relationship.

However, even if we were to recognize a separate tort of negligent spoliation of evidence (preventing pursuit of a prospective civil action), several factors absent here would be required. For example, it would be required to be demonstrated that an effort to pursue the separate civil action was unsuccessful because of the absence of the destroyed evidence or possibly, at the very least, that pursuit of such an action was rendered impossible because of the destruction of the evidence. Second, it would have to be proved that the evidence which was destroyed was of such a nature that it would have enabled the plaintiff successfully to pursue the separate civil action against the alleged original tortfeasor. Here, we are left to speculate as to whether the destroyed steering mechanism would have been evidence of a malfunction or design defect. At the very least, plaintiff would be required to present evidence from which it could reasonably be inferred that the cause of the accident was a malfunction of the vehicle, rather than negligence of the operator of the motor vehicle. Unfortunately, plaintiff has no recollection of what occurred. From her testimony, it is not possible, and would be unreasonable to infer that the accident was the result of a malfunction of the steering mechanism of the vehicle. There is no independent evidence of how the accident occurred. In short, the evidence is that, for unexplained reasons, plaintiff's vehicle went left of center and crashed into another vehicle. There is no prior history of steering problems with the vehicle, nor any explanation of why the vehicle went left of center, other than that it was a windy day. Plaintiff's burden is to present evidence from which it reasonably could be inferred that it is more probable that the accident was the result of malfunction of the vehicle, rather than operator negligence.

As indicated above, plaintiff has no recollection of how the accident occurred, but admits that she had no prior steering problems with the automobile. Plaintiff presented an affidavit of an expert with master's degrees in physics, mechanical engineering, and business administration, and considerable experience in the mechanical reconstruction fields. The expert stated that, when he inspected the vehicle on April 23, 1988, he found several parts missing on the vehicle, including "parts of the power steering assembly, the ball joint on one lower arm, the left tie rod, all the wheels and tires, the spindle, hub, brake, rotor and caliber of the right front." The expert further stated that, as a result of the removal of those parts from the vehicle, which could be the cause of steering control failure, he was unable to render an opinion either as to the cause of the crash or as to whether a malfunction

defect existed. The fact that an expert is unable to determine whether or not a malfunctioning defect in the steering assembly of the car existed does not give rise to an inference that it did. This is not a case where circumstantial evidence tends to indicate a malfunction or defect in the vehicle, and evidence is destroyed which prevents corroboration of the inference drawn from such circumstantial evidence by either direct evidence as to the condition of the automotive parts or expert testimony as to such malfunctioning defects based upon such direct evidence and circumstantial evidence. Rather, as the expert's affidavit indicates, there is no basis upon which the expert can make a determination as to whether or not there was a malfunction or defect in the steering assembly which caused the crash.

Turning more specifically to the assignments of error, the first assignment of error deals with the question of whether there is an independent tort of spoliation of evidence. If there be such a tort, it may be divided into two types: one is the intentional spoliation of evidence, and the other is the negligent spoliation of evidence.

With respect to the question of intentional spoliation of evidence, plaintiff points out that the General Assembly has established crimes for destruction of evidence, including that of tampering with evidence under R.C. 2921.12. Arguably, that statute, coupled with R.C. 2307.60, does create a civil action for intentional spoliation of evidence. Moreover, R.C. 2307.61 seems more specifically to create such an action for willful damage of another's property, for which recovery may be had "in addition to the value of the property, any other loss sustained as a result of the willful damage * * *."

██ Plaintiff relies upon *Smith v. Superior Court* (1984), 151 Cal.App.3d 491, 198 Cal.Rptr. 829, which involved an action for intentional spoliation of evidence, and the court recognized that damages may include "probable expectancies." Plaintiff also relies upon *Velasco v. Commercial Bldg. Maintenance Co.* (1985), 169 Cal.App.3d 874, 215 Cal.Rptr. 504, which stated that there may be a cause of action for negligent destruction of evidence needed for prospective civil litigation but that it did not exist in that case because the maintenance employee who destroyed the evidence (consisting of an unlabeled bag containing a broken bottle on an attorney's desk) could not be expected to know that valuable evidence was being destroyed. Plaintiff also relies upon *Petrik v. Monarch Printing Corp.* (1986), 150 Ill.App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312. The Illinois court pointed out that, at least up to that time, only Florida and California, in addition to Illinois, had recognized a tort of spoliation of evidence, whether intentional or negligent. Although recognizing a tort of negligent spoliation of evidence as against an adversary in litigation who destroyed the evidence, the Illinois court found that there had

been no proof that the destruction of such evidence was the reason for the claimant's failure to prevail in the other action upon the claim against the other party who destroyed the evidence. In other words, as we indicated above, there must, at the very least, be some proximate relationship between the failure of success in the underlying action and the unavailability of the destroyed evidence.

For the reasons set forth above, we have found that, construing the evidence most strongly in favor of plaintiff, there is no basis upon which reasonable minds could conclude that plaintiff would prevail in a products liability claim had the automobile parts not been removed or destroyed. Plaintiff has neither unsuccessfully pursued such a products liability claim nor demonstrated that there is any evidentiary basis for a products liability claim other than the possibility that inspection of the missing parts might have revealed a defect which caused the accident. Speculation based upon possibility is too tender a reed upon which to base a claim for relief. Even assuming the trial court was in error in refusing to recognize the independent tort of spoliation of evidence, whether intentional or negligent, plaintiff has failed to prove any prejudice resulting from such alleged error. Accordingly, the first assignment of error is not well taken.

By the second assignment of error, plaintiff contends that the trial court erred in stating that there was "not a scintilla of evidence that plaintiff's automobile malfunctioned." Even assuming that the trial court was in error in stating that there was not even a scintilla of evidence, as indicated above, the evidence was such that, construed most strongly in favor of plaintiff, reasonable minds could not have concluded that there was a reasonable probability that plaintiff's automobile malfunctioned causing the accident. Accordingly, there is no prejudice, even if the trial court overstated the lack of evidence, and the second assignment of error is not well taken.

By the third assignment of error, plaintiff contends that the trial court erred in concluding that there was no notice to the defendants to hold the vehicle for inspection. Although there was no evidence that the holding of the automobile was for purposes of inspection, there was evidence indicating that both defendants understood that the automobile should be held intact until at least plaintiff's claim under the Nationwide policy was settled. Nevertheless, we find no prejudicial error for the reasons stated in connection with the first assignment of error. The third assignment of error is not well taken.

By the fourth assignment of error, plaintiff contends that the trial court erred in granting summary judgment because there is an issue of fact as to whether Nationwide voluntarily assumed a duty to plaintiff to preserve the crashed vehicle and whether Sims Brothers was an agent of Nationwide in

holding the vehicle and eventually destroying it. As indicated above, there may well be questions of fact as to the duty of both Nationwide and Sims Brothers to hold the vehicle intact. However, having failed to do so does not necessarily give rise to an action for negligent spoliation of evidence. For the reasons set forth in the first assignment of error, any error on the part of the trial court in finding no duty of either Nationwide or Sims Brothers to hold the vehicle is not prejudicial. Accordingly, the fourth assignment of error is not well taken.

For the foregoing reasons, all four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOWMAN and PEGGY BRYANT, JJ., concur.