DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Pike County Court of Common Pleas, which entered a judgment against Defendant-Appellant Ray Stacy and in favor of Plaintiff-Appellee Sheryl Smith. In doing so, the court found that appellant had violated, in numerous manners, the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq., which governed the transaction between appellant and appellee for the repair of a vehicle. The court granted damages to appellee in the amount of $11,422.20 as well as the return of the subject vehicle to her. Appellant asserts in his argument that the findings of the trial court are contrary to the manifest weight of the evidence and that damages were improperly granted and calculated. We find that a portion of the damages were improperly granted and calculated, reverse the judgment of the trial court, and remand the matter for further proceedings consistent with this opinion.
STATEMENT OF THE CASE AND FACTUAL STATEMENT
On September 17, 1998, appellee filed a complaint against appellant with the Pike County Court of Common Pleas. The complaint presented causes of action sounding in conversion, trespass to chattels, breach of bailment, and violations of the Ohio Consumer Sales Practices Act (CSPA). See R.C. 1341.01 et seq. The complaint specifically sought compensatory damages totaling $9,780, punitive damages totaling $19,560, and injunctive relief pursuant to R.C. 1345.02(D).
Appellant filed an Answer and Counterclaim on November 4, 1998, denying all allegations and claiming that appellee owed him $2,175 for services performed on her vehicle and the storage of it by him.
Appellee, with leave of the trial court, subsequently filed an amended prayer for relief, seeking compensatory damages of $22,000, injunctive relief, costs, and "any other just and equitable relief." Also with leave of the court, appellee filed an answer to appellant's counterclaim denying she owed any money for storage or services rendered. Appellee's answer further stated that violations of the CSPA barred appellant's recovery and that there was no contract between the parties for the storage of the vehicle.
The case was submitted to the trial court on an agreed stipulation, which was entered on December 8, 1999. The stipulation provided that the depositions of Ray Stacy and Sheryl Smith were to be considered as live testimony. The entry further stipulated that the value of the vehicle, an S-10 Chevy Blazer 4X4 in running condition, was $3,550, and that appellee was the owner of that vehicle at all times relevant to the action. It was also stipulated that appellant would testify that appellee had four outstanding bills: for storage dated April 1, 1998; for rental dated January 19, 1998; for "checking the motor out" dated January 23, 1998; and for the estimate to repair the vehicle dated January 8, 1998.
The stipulation went on to provide that appellee would testify that the following items were in the vehicle when it was delivered to appellant: forty compact discs valued at $15 to $35 each; seven cassettes valued at $7 to $8 each; two compact-disc players valued at $159 each; a digital radio valued at $289; a cellular phone valued at $249; and thirty telephone-calling cards valued at $10 each. The entry stipulated that appellant would testify that none of these items were present in the vehicle when it was delivered to his shop.
Finally, the parties stipulated that appellee's prayer for relief was to be amended to eliminate the request for injunctive relief and that appellant's counterclaim was to be amended to include a claim for car rental.
Briefs were filed by the parties, whereupon, the court entered its decision. The trial court found that the transaction between the parties was governed by the CSPA and that appellant had violated it in numerous ways. The court further found that appellee was entitled to treble damages as a result of these CSPA violations. The court calculated the damages to be paid by taking the value of the vehicle, $3,550, subtracting the cost of repairs needed to return it to running condition, $1,547.60, adding the value of the personal property in the vehicle, $1,805, and multiplying that total by three, for a total of $11,422.20. The lower court granted judgment to appellee in this amount. The court further ordered that appellant return the vehicle to appellee and that appellant pay costs.
Appellant made a request for separate statements of findings of fact and conclusions of law. The court ordered both sides to submit proposed findings of fact and conclusions of law, which the parties did on February 24, 2000.
On February 28, 2000, the court found that appellee's findings of fact and conclusions of law were accurate and supported by the record and adopted them as the court's own. Appellee was subsequently ordered by the trial court to prepare a final appealable order in conformance with the adopted findings and its original decision and judgment entry of February 4, 2000, which appellee did.
Appellant timely filed a notice of appeal with this Court and presents the following assignments of error for our review:
 I. THE FINAL JUDGMENT HEREIN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
 II. THE TRIAL COURT ERRED BY GRANTING REPLEVIN AS SUCH WAS NOT REQUESTED BY THE PLAINTIFF.
 III. THE TRIAL COURT ERRED BY GRANTING BOTH REPLEVIN AND
MONETARY JUDGMENT FOR THE FULL VALUE OF THE CAR.
IV. THE TRIAL COURT ERRED IN CALCULATING THE DAMAGES.
OPINION
 I.
In his First Assignment of Error, appellant argues that the judgment of the trial court was contrary to the manifest weight of the evidence. In his brief, appellant lays out the proper standard of review, which is that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. However, appellant proceeds to then argue that this court should conduct a de novo review because the presumptions that underlie the manifest weight of the evidence standard are not present in the casesub judice.
Appellant argues that the deferential standard of review that is called for should not apply because the case was submitted to the trial court on stipulations and depositions, rather than through a trial with live witnesses.
The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1274.
Appellant provides no support for his contention that this court should conduct a de novo review of the case, and we note that this court has applied the manifest weight of the evidence standard of review to prior cases similar to the one sub judice. For instance, in Skaggs v. Miller
(May 17, 1996), Scioto App. No. 95CA2381, unreported, the parties agreed to stipulate to the issues and evidentiary matters and submit the case for the trial court's determination. In reviewing that trial court's judgment, we applied the manifest weight of the evidence standard of review, which requires that we determine whether the trial court's judgment is supported by some competent, credible evidence. Id.
Appellant specifically argues that the trial court's judgment was against the manifest weight of the evidence in that the record does not support (1) a finding of conversion or trespass to chattels, (2) a finding that appellant committed a breach of bailment, or (3) a finding that appellant violated the CSPA. Since it is more conducive to our analysis, we will review appellant's challenge to each of these findings in reverse order.
 A.
The trial court found numerous violations of the CSPA. In order to establish these violations, the court must first have determined that the transaction between the parties was one to which the CSPA applied. The record establishes that appellee was indisputably a consumer for purposes of the act under R.C. 1345.01(D), because her dealings with appellant, a supplier under R.C. 1345.01(C), were a "consumer transaction" as defined by R.C. 1345.01(A). Therefore, as the trial court properly concluded, the CSPA applies to this case.
The CSPA is intended to prohibit suppliers from engaging in unfair or deceptive sales practices as defined in R.C. 1345.02(B) and rules promulgated by the Attorney General under R.C. 1345.05. The act must be liberally construed since it is intended "to compensate for traditional consumer remedies." Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27,29, 548 N.E.2d 933, 935. R.C. 1345.05 also requires that the Attorney General make available for public inspection opinions and judgments of the courts, which have found certain specific practices or acts to violate R.C. 1345.02 or 1345.03, thereby informing both consumers and suppliers of what constitutes unfair or deceptive sales practices.
In the instant case, the trial court found that appellant violated the CSPA by engaging in the following unfair or deceptive sales practices:
 1. At their initial face-to-face meeting, appellant failed to give appellee an estimate on the proper form, as required by Ohio Adm. Code 109:4-3-13(A);
 2. Appellant failed to initially disclose the charges associated with diagnosing the engine problem, as required by Ohio Adm. Code 109:4-3-13(C)(4);
 3. Appellant failed to provide appellee with an itemized list of any repairs or services performed, as required by Ohio Adm. Code 109:4-3-13(C)(12);
1. Appellant back-dated or created false documents professing to be related to the transaction, including the estimate, the bill for checking out the vehicle's motor, the bill for car rental, and the bill for storage of appellee's vehicle, a practice previously found to be a violation of R.C. 1345.02. See Lardakis v. Martin (Aug. 8, 1994), Summit C.P. No. CV 94-01-0234, unreported; and,
5. Appellant retained a mechanic's lien on appellee's vehicle after engaging in practices which violated the CSPA, a practice previously found to be a violation of R.C. 1345.02. See Porter v. Central AutoElectric Radiator Shop, Inc. (Nov. 26, 1990), New Philadelphia M.C. No. 70890CVF-124, unreported.
As noted, appellant argues that the trial court's findings regarding the purported violations of the CSPA are against the manifest weight of the evidence. Specifically, appellant states that each of the findings of fact, as adopted by the lower court, are not supported by the evidence in the record, and that the conclusions of law, for which those findings are a foundation, are also contrary to the evidence. Therefore, we must determine if the lower court's findings are supported by some competent and credible evidence sufficient to withstand appellant's manifest weight of the evidence challenge. See C.E. Morris Co., supra.
There is competent and credible evidence in the record to support the factual findings of the lower court. The record contains evidence that in early January 1998, appellee took her vehicle to appellant to have him determine the cause of some engine problems. Also found in the record is evidence that upon arrival at appellant's shop, the engine seriously malfunctioned, rendering the vehicle inoperable. Appellee testified in her deposition that she requested an estimate, which was not provided to her at this initial contact, and left the vehicle at appellant's place of business for a diagnosis. Appellee further testified that appellant did not disclose to appellee any possible charges for diagnosing the engine problem or for the storage of the vehicle.
Contrary to appellant's assertions in his brief, the trial court can find a party's testimony not credible even though the only testimony available is that which is presented in a deposition. See Skaggs, supra. The trial court could also properly find that appellant's retention of the vehicle constituted a total loss of the vehicle, and although appellant claims otherwise, the vehicle was in his possession at the time the court made its findings, and had been so for over two years. Appellant also argues that the trial court found the vehicle to have the same value as one in running condition. However, the trial court made no such finding, and, in fact, found just the opposite.
Appellant is arguing that the trial court's findings of fact fail to support the conclusions of law necessary to affirm the trial court's ruling. Appellant simply puts forth the conclusory argument that there is no evidence to support the conclusions made. However, as previously noted, there is some competent, credible evidence in the record to support the court's findings of fact and conclusions of law. The lower court reached its factual findings and conclusions by assessing the depositions of appellant and appellee, the stipulations regarding their testimony, and their exhibits. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co.,54 Ohio St.2d at 280, 376 N.E.2d at 579.
The trial court's conclusions of law, that appellant violated the CSPA through noncompliance with Ohio Adm. Code 109:4-3-13(A), (C)(4), and (C)(12), in that appellant failed to provide appellee an estimate at their initial contact, failed to disclose the charges for diagnosing the vehicle's problem, and failed to provide an itemized list of repairs or work done to the vehicle, are supported by the record. Appellant argues, however, that there is no evidence to establish the alleged backdating of documents.
The Summit County Court of Common Pleas held in Lardakis that the "practice of back-dating documents or creating false documents purporting to relate to a transaction is an unfair and deceptive act or practice in violation of R.C. 1345.02." Pursuant to R.C. 1345.05, this holding was made available for public inspection by the Attorney General on August 8, 1994.
As noted in appellant's brief, there is no testimony in the depositions regarding this issue, but the documents themselves are in the record. From the simple review of the documents in question, it is evident that the trial court's conclusion that the documents were backdated or falsely created is clearly supported by evidence.
For instance, the bill for storage, which is dated April 1, 1998, states that storage was charged at $10 dollars per day and that as of September 24, 1998, appellee owed $1,770. If this document was truly prepared in April 1998, absent a crystal ball or some other method of divination, how could appellant know that on September 24, 1998, appellee would owe $1,770 for storage of her vehicle? The answer is both obvious and dispositive of this argument.
Likewise, the remaining three documents are also filled with discrepancies that are evidence of their falsity or that they were backdated. Therefore, the trial court's finding that appellant either backdated or falsely created these documents is supported by the required quantum of competent, credible evidence.
Appellant also argues that no evidence was presented to negate the existence of his mechanic's lien, "except for the litany of the [sic] unsubstantial and unsupported allegations that [appellant] violated the [CSPA]." The New Philadelphia Municipal Court has held that a supplier's retention of a common law possessory mechanic's lien after he has engaged in violations of the CSPA is a deceptive and unfair practice in violation of R.C. 1345.02. See Porter, supra. Pursuant to R.C. 1345.05, this holding was made available for public inspection by the Attorney General on July 30, 1992.
Since we have already determined that the lower court's findings, that appellant violated other provisions of the CSPA, are supported by the record, the trial court's finding that appellant's retention of a mechanic's lien on appellee's vehicle violated the CSPA is also well-supported.
Therefore, we find the trial court's findings that appellant violated the CSPA were not against the manifest weight of the evidence.
Appellant further argues that the trial court's finding that he committed a breach of bailment was also against the manifest weight of the evidence. "In order to establish a prima facie case, the bailor need prove only (1) the contract of bailment, (2) delivery of the bailed property to the bailees and (3) failure of the bailees to redeliver the bailed property undamaged at the termination of the bailment." David v.Lose (1966), 7 Ohio St.2d 97, 99, 218 N.E.2d 442, 444.
When personal property is delivered by the owner to another person and both parties derive a benefit therefrom, a mutual bailment exists. Corielv. Estate of McGraw (Nov. 19, 1996), Scioto App. No. 95CA2396, unreported. "[T]he law will hold a mutual benefit bailee liable for losses arising from a breach of ordinary care. Courts may infer negligence from the fact that a mutual benefit bailee has failed to redeliver the bailed property undamaged at the termination of the bailment." Coriel, citing David, supra.
After establishing a prima facie case, the defendant must then produce evidence to explain his failure to return the bailed property. SeeDavid, supra. "Where a bailor delivers property to a bailee and such bailee fails to redeliver the bailed property upon legal demand therefor, a cause of action, either ex contractu or ex delicto, accrues in favor of the bailor." Agricultural Ins. Co. v. Constantine (1944),144 Ohio St. 275, 58 N.E.2d 658, paragraph two of the syllabus.
Appellee delivered her S-10 Chevy Blazer to appellant for the purpose of diagnosing engine problems and receiving an estimate of the cost to repair it. This was a bailment for the mutual benefit of the parties. Appellee, the legal owner of the vehicle, made several demands that the vehicle be returned to her, which appellant failed to do. Therefore, a prima facie breach of bailment has been established.
As a justification, appellant claims to have had a mechanic's lien on the vehicle for the cost of diagnosing the engine problem. However, as we have already discussed, a mechanic's lien is invalidated by violations of the CSPA, and the retention of a lien in this case was itself a violation of the CSPA. See Porter, supra.
Therefore, we find that the record contains the required competent, credible evidence to support the trial court's finding that appellant had committed a breach of bailment.
 C.
Appellant argues that the trial court's finding that he committed a tortious conversion of appellee's vehicle was also against the manifest weight of the evidence. Conversion is the wrongful exercise of control or dominion over property belonging to another. See Fulks v. Fulks (1953),95 Ohio App. 515, 121 N.E.2d 180. This exercise of control or dominion must be inconsistent with the rights of the property's owner. See id. TheFulks court further held that
 [i]t is not necessary for the plaintiff to show wrongful purpose or intent by the person charged with conversion; neither is it necessary to show an assertion of ownership over the property by the person committing the wrongful, unauthorized act. The person so charged may be acting under misapprehension or mistake and still be guilty of conversion.
(Emphasis added.) Id. at 519, 121 N.E.2d at 182.
A breach of bailment can also result in a conversion. See Tomas v.Nationwide Mutual Insurance Co. (1992), 79 Ohio App.3d 624, 607 N.E.2d 944. "If the bailee causes or permits the property to be destroyed or damaged, this constitutes a conversion of the property to the bailee's own use." Id. at 629, 607 N.E.2d at 947. In the case sub judice, the property was not destroyed but was wrongfully retained by appellant. SeeMinix v. Collier (Aug. 4, 2000), Scioto App. No. 99CA2690, unreported (stating that the elements of conversion include either a wrongful taking or a wrongful retention of the property).
Since the record establishes that appellant retained possession of appellee's vehicle after appellee had demanded its return, a conversion of the vehicle occurred. Even though appellant withheld the vehicle from appellee based on his misapprehension that he had a mechanic's lien on the vehicle, a conversion occurred nonetheless. See Fulks and Tomas, supra.
Therefore, the finding that appellant tortiously converted appellee's vehicle is supported by some competent and credible evidence.
As the standard of review makes clear, we are to be very deferential to the findings of the lower court in matters such as this. The trial court's findings that appellant committed a breach of bailment of appellee's vehicle, tortiously converted the same by continually failing to return it to appellee, and violated the CSPA are all supported by some competent, credible evidence found in the record.
Appellant's First Assignment of Error is hereby OVERRULED.
 II.
Appellant's Second and Third Assignments of Error are intertwined and will be addressed simultaneously. Appellant argues that the trial court erred by granting replevin when such was not requested by the appellee in her complaint. Appellant also argues that the trial court erred by ordering both monetary damages equal to the value of the vehicle and the return of the vehicle to appellee.
Appellant's arguments are both well founded. Replevin is a statutory cause of action that allows a person who owns chattels, and is entitled to their possession, to seek their return from anyone who wrongfully interferes with that possession. See America Rents v. Crawley (1991),77 Ohio App.3d 801, 603 N.E.2d 1079. The court in Crawley held that a trial court has no power to issue a post-judgment order for the return of personal property. See id. "R.C. 2737, in clear and unambiguous language, states that replevin is a prejudgment remedy that is available only if specific procedures are followed." Id. at 804, 603 N.E.2d at 1080. As no replevin action was sought by appellee, the trial court erred in ordering the return of the vehicle on that basis.
Also, appellant's argument that the trial court erred by granting appellee both monetary damages and the return of the vehicle is properly made, and appellee concedes as much. Appellee is entitled to only one remedy, and the granting of both damages based on the total loss of the vehicle and the return of the vehicle constitutes a double recovery. SeeSeifert v. Burroughs (1988), 38 Ohio St.3d 108, 526 N.E.2d 813.
Therefore, appellant's Second and Third Assignments of Error are SUSTAINED.
 III.
Appellant's Fourth Assignment of Error is that the trial court incorrectly calculated appellee's damages. Appellant conducts a two-front assault on the court's assessment of damages. First, appellant argues that the damages as determined by the court are not supported by the evidence presented to the court. Second, appellant states that appellee did not request punitive damages in her complaint and that only statutory damages are available to appellee, and that those statutory damages were erroneously calculated by the trial court. We will address these arguments in turn.
 A.
As we have previously stated, the appropriate standard of review to determine the propriety of the court's judgment is whether the decision is against the manifest weight of the evidence. In other words, we will not interfere with the trial court's decision if it is supported by some competent and credible evidence. See C.E. Morris Co., supra.
Appellant first attacks the trial court's evaluation of the value of the wrongfully retained property. Appellant relies again on his misinterpretation of the lower court's ruling, when he argues that the trial court erroneously found the S-10 Chevy Blazer to have a value of $3,550 at the time it was delivered to appellant. The lower court made no such finding. The trial court took the value of the vehicle in running condition, $3,550, which was stipulated to by the parties, and then subtracted the estimated cost to return the vehicle to running condition, which was provided by appellant, $1,547.60. This established the value of the vehicle at $2,002.40. The finding of the lower court establishing the value of the vehicle is, therefore, supported by competent, credible evidence found in the record.
Appellant's second attack is against the trial court's finding that appellee had personal property valued at $1,805 in the vehicle at the time of its delivery to appellant. The stipulation entered into by the parties states that appellee would testify to the existence and value of the property left in her vehicle, and that appellant would testify that the property was not in the vehicle at the time of delivery. The trial court obviously found that appellee was more credible than appellant regarding the existence and value of this personal property. Contrary to appellant's assertions, the court had the opportunity to temporarily examine the demeanor of the parties when they were in the court's presence and entered into the stipulation. The court's decision to believe appellee's version of events over appellant's is not to be interfered with. See C.E. Morris Co., supra.
However, appellant appropriately points out that the lower court did not make a finding as to any duty owed by appellant regarding the contents of the vehicle. A bailment is founded on contract principles and contract requirements, such as a meeting of the minds and consideration, which must be met. See David and Agricultural Ins. Co., supra. Before a bailee can accept responsibility for the contents of a vehicle, which are not ordinarily kept or found in a vehicle, he must have notice of their existence and placement in the vehicle. See Edwards v. Crestmont CadillacCorp. (M.C. 1979), 64 Ohio Misc. 1, 410 N.E.2d 815. The record is silent regarding any potential notice given appellant regarding the contents of the vehicle. Therefore, granting damages for their loss by the trial court, in the amount of $1,805, the value of these contents, was in error, and we so find.
 B.
Appellant properly notes that in appellee's amended prayer for relief she does not request punitive damages. However, punitive damages were not granted and need not be addressed. As properly noted, damages are to be calculated under the CSPA. R.C. 1345.09 provides, in pertinent part, the following:
 For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:
* * *.
 (B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.
* * *.
Therefore, appellee is entitled to receive from appellant the greater ofthree times the amount of her actual damages or $200.
Appellant argues that the determined value of the vehicle is irrelevant to the determination of appellee's actual damages. We disagree. The trial court found that appellant's retention of appellee's vehicle resulted in its total loss to her, a finding that is supported by the record. Eight months had passed between the time the vehicle was delivered to appellant and the filing of the complaint in this case. The car spent a total of over two years in appellant's possession by the time the court made its findings and entered its final order. Since appellant retained the vehicle and appellee chose to seek damages, the value of the vehicle was lost to appellee, and as such is relevant to the determination of damages.
As noted earlier, appellant also argues that the inclusion of the value of the personal property in the vehicle was improper. We agree. Although the value of the personal property left in the vehicle, as determined by the trial court, is supported by some competent, credible evidence, appellant's responsibility for the property was not established and its loss was not the result of any CSPA violation. Therefore, its inclusion in the calculation of damages was erroneous.
In the case sub judice, the trial court properly found five violations of the CSPA as well as a common law breach of bailment, which resulted in a conversion. Appellant, pursuant to the act is entitled to relief for each violation of the CSPA. See Porter and Lardakis, supra. That relief is the greater of $200 or three times appellee's actual damages arising from the violation. See R.C. 1345.09.
The first four violations of the CSPA found by the trial court resulted in no actual damages to appellee. Appellee is, therefore, entitled to statutory damages of $200 per violation. See Porter and Lardakis, supra. Appellant's fifth violation of the CSPA, the retention of the Blazer, was also a breach of bailment and a conversion; and, as the lower court found, resulted in the total loss of appellee's vehicle. Therefore, as the trial court properly concluded, appellee's actual damages resulting from this violation were $2,002.40, the value of the vehicle determined by the lower court, which when trebled, is greater than $200.
Therefore, appellant's final argument that treble damages were erroneously calculated is correct and we so find, and his Fourth Assignment of Error is SUSTAINED.
CONCLUSION
As a matter of review, the findings of this court are as follows:
 I. The final judgment of the trial court, that appellant violated the CSPA in numerous manners, committed a breach of bailment, and converted appellee's vehicle, is supported by some competent, credible evidence and, therefore, not against the manifest weight of the evidence;
 II. The trial court erred in contemporaneously granting the return of appellee's vehicle and monetary damages based on the value of that vehicle; and,
 III. The trial court erred by not determining the damages of each separate CSPA violation and by including the value of appellee's personal property in its calculation of damages under R.C. 1345.09.
Therefore, the judgment of the trial court is REVERSED and REMANDED for further proceedings and a recalculation of the damages consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED INPART and the cause REMANDED to the trial court for further proceedings consistent with this opinion, costs herein taxed equally between the parties.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the PIKE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Harsha, J. Concurs in Judgment and Opinion.
Kline, J. Concurs in Judgment Only.