OPINION
Plaintiff-appellant, Proliance Insurance Company ("Proliance"), appeals from a judgment of the Franklin County Municipal Court granting the summary judgment motion of defendant-appellee, Lindsay Acura. Plaintiff assigns a single error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE LINDSAY ACURA.
Because the trial court erred in granting summary judgment to Lindsay Acura, we reverse the judgment of the trial court.
On April 18, 2000, Proliance filed a complaint for damages against Lindsay Acura and Anthony L. Spaulding. Proliance alleged that it had in full force and effect a policy of insurance which provided comprehensive and rental coverage on a 1998 Acura automobile being leased by Kevin Gallagher. According to the complaint, on June 13, 1999, Gallagher delivered the car to Lindsay Acura to have repairs or maintenance performed on it, thereby creating a bailment contract. Contrary to the bailment, Lindsay Acura failed to return the car to Gallagher in an undamaged condition at the termination of the bailment. Instead, the vehicle was stolen and damaged in the amount of approximately $6,700. Without his car, Gallagher was required to rent a replacement car at a cost of $500. Pursuant to its policy, Proliance paid to Gallagher, or on his behalf, (1) the sum of $6,600.26, the damage to the vehicle less the $100 deductible, and (2) $500 for the rental. Accordingly, the complaint sought $7,100.26 plus costs and interest against Lindsay Acura and Spaulding. Proliance was unable to serve Spaulding, but achieved service on Lindsay Acura, who responded with an answer.
On July 13, 2000, Lindsay Acura filed a motion for summary judgment, attaching to it the affidavit of William Lytle. Proliance responded with a memorandum contra, accompanied by the affidavit of its insured, Kevin Gallagher. Following Lindsay Acura's reply brief, the trial court on October 27, 2000, filed a judgment entry granting the summary judgment motion of Lindsay Acura. Proliance has appealed, and asserts the trial court erred in granting summary judgment to Lindsay Acura.
Preliminarily, in accordance with Civ.R. 56, a court must construe the evidence most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317, approved and followed).
The Supreme Court in David v. Lose (1966), 7 Ohio St.2d 97, syllabus, set forth the law pertaining to bailments:
 1. In order to establish a prima facie case against a bailee in an action sounding in contract, a bailor need prove only (1) the contract of bailment, (2) delivery of the bailed property to the bailee and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment.
 2. In an action by a bailor against a bailee based upon a breach of the contract of bailment, where the bailor proves delivery of the bailed property and the failure of the bailee to redeliver upon legal demand therefore, a prima facie case of want of due care is thereby established, and the burden of going forward with the evidence shifts to the bailee to explain his failure to redeliver.
Thus, "[o]nce the bailor establishes that the bailee failed to redeliver the bailed property, an inference of negligence by the bailee may be drawn." Abercrombie v. BP Procare (Apr. 9, 1998), Cuyahoga App. No. 73393, unreported. Nonetheless, a "bailee will not be held liable if the bailed property was lost without fault or want of care on the part of the bailee. * * * A bailee is required to exercise ordinary care in safeguarding the bailed property. Ordinary care is that degree of care which an ordinarily prudent person would exercise in caring for their own property under like circumstances." (Citations omitted.) Id.
Despite the shifting burden of going forward with evidence, the burden of proving Lindsay Acura's negligence remained with Proliance. Id., citing Tomas v. Nationwide Mut. Ins. Co. (1992), 79 Ohio App.3d 624. To prevail, Proliance ultimately must establish by a preponderance of the evidence that Lindsay Acura was guilty of negligence or want of due care. Id., citing Midwestern Indemn. Co. v. Winkhaus (1987),42 Ohio App.3d 235.
In support of its summary judgment motion, Lindsay Acura supplied the affidavit of William Lytle. Lytle's affidavit stated that he was presently employed as a service manager for Lindsay Acura, and had been employed in the service/parts department of multiple new car automobile dealerships over the years. As a result, he had considerable familiarity with the typical operation of a dealership's service/parts department, including the one at Lindsay Acura.
Lytle stated he was aware that on or about June 13, 1999, Kevin Gallagher's 1998 Acura automobile was stolen from the Lindsay Acura dealership lot. Gallagher left his vehicle when the dealership was closed by using what is commonly referred to as the "night drop" or "early bird" drop. He parked his vehicle on the dealership lot and would have placed the keys to his car in an envelope that would have been dropped in the "early bird" slot.
Comparing Lindsay Acura's "early bird" drop with those of other new car dealerships in Columbus, Lytle stated that every new car dealership had a similar procedure and that Lindsay Acura's is "the same or similar in construction to those used as other dealerships." (Lytle Affidavit, para. 5.) Lytle also stated that before the incident with Gallagher, Lindsay Acura never had a similar problem with a car left by a customer in that manner: "This was the first time a car left via the `early bird' procedure had ever been stolen off the lot." (Id., para. 6.)
In describing the premises, Lytle stated the lot was fully lighted and the level of security taken by Lindsay Acura in its "early bird" service is commensurate with the level of security customarily employed by new car dealerships in the area. Lytle offered that the Gallagher vehicle "was stolen despite the fact that Lindsay Acura employed the common and typical level of care utilized by dealerships in accepting `early bird' drop off of vehicles." (Id., para. 7.)
Proliance responded to Lytle's affidavit with the affidavit of Kevin Gallagher who stated he dropped the vehicle off after hours and utilized the "early bird" drop-off service provided by Lindsay Acura. Sometime during the night the vehicle was stolen. When he returned to Lindsay Acura the next day, he observed that the door "which held the slot for the early bird drop off was about 1 inch above the floor. Keys are placed in envelopes and dropped into the slot and land on the floor. * * * When my car was finally recovered, the envelope which had contained the keys to my car was inside the car." (Gallagher Affidavit, para. 4-5.)
Given that evidence, Proliance met its initial burden in demonstrating that its insured dropped off his vehicle to Lindsay Acura in what Lindsay Acura admits to be a mutual benefit bailment. Lindsay Acura failed to return the car in an undamaged condition. Accordingly, the burden shifted to Lindsay Acura to set forth evidence explaining its failure to redeliver the bailed property. In Lytle's affidavit, he explains that although the car was stolen from the lot, the theft happened despite Lindsay Acura providing all the typical security found in new car dealerships throughout the area.
Proliance responds by asserting that comparison with other dealerships is inappropriate if they, too, are being negligent. Moreover, Proliance contends the affidavit of Kevin Gallagher suggests a negligence particular to Lindsay Acura. Specifically, Proliance alleges the one-inch gap between the door which held the slot for the "early bird" drop-off and the floor enabled the thief to retrieve the keys and take Gallagher's automobile. Proliance's argument is supported by the fact the envelope which contained Gallagher's keys was found inside the car when the car ultimately was recovered.
As a result, even if Lindsay Acura's evidence suggests ordinary care on the part of Lindsay Acura, and thus meets Lindsay Acura's burden of setting forth evidence, the evidence from Proliance suggests the theft occurred for reasons peculiar to Lindsay Acura: a gap in the door which negligently allowed the thief to pull the envelope from under the door and steal the vehicle. Proliance thus has come forward with evidence that counters Lindsay Acura's evidence and, for purposes of summary judgment, allows an inference of Lindsay Acura's negligence in the theft of Gallagher's car.
Lindsay Acura, however, contends Proliance has failed to present any evidence suggesting the gap in the door existed on June 13, 1999, the day Gallagher left his car at Lindsay Acura. Gallagher in fact viewed the one-inch gap in the door the day after he dropped off his automobile. Nothing in the evidence suggests the door had been changed in the interim. For purposes of summary judgment, Proliance's evidence is sufficient to preclude summary judgment in that respect.
Similarly, Lindsay Acura contends Proliance's evidence is irrelevant because the actual method by which the thief obtained access to the car is unknown. Even if the evidence about the gap in the door or the envelope in the car singly would be insufficient, the combination of the two allows an inference that the key was obtained from the envelope, and that Lindsay Acura was negligent in using a door that did not protect the envelopes from access by those who had no right to the keys.
In the final analysis, Proliance met its initial burden of making a prima facie case for a failed bailment. Lindsay Acura suggested ordinary care on its part. Proliance responded with evidence which, if believed, not only suggests the cause of the theft but identifies the negligence of Lindsay Acura that allowed the theft. Accordingly, the trial court improperly granted summary judgment to Lindsay Acura.
Given the foregoing, we sustain Proliance's single assignment of error, reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
 _________________ BRYANT, P.J.
DESHLER and PETREE, JJ., concur.