DECISION.
{¶ 1} Plaintiff-appellee James W. Croskey left his car at a repair shop for installation of an engine and transmission after a first attempted repair failed, only to have his car stolen from the shop's lot twice. The owners of the repair shop, defendants-appellants, Carl Leach and Joe Leach, d/b/a Leach Brothers Automotive Services and d/b/a Joe Leach Service Center, appeal a Hamilton County Municipal Court judgment in Croskey's favor. The court found the Leaches liable for failure to redeliver Croskey's car due to their failure to exercise ordinary care to protect against loss or damages, further ruling that the Leaches had violated the Ohio Consumer Sales Practices Act. The court awarded treble damages plus reasonable attorney fees to Croskey. We affirm.
A Failed Repair — And Two Thefts
{¶ 2} In June 1999, Croskey and his aunt, Ruth St. Hilaire, took Croskey's 1985 Buick to the Leaches for replacement of the engine and transmission. St. Hilaire agreed to pay for the repairs to Croskey's Buick, with the understanding that Croskey would pay her back over time. The Leaches put in a used engine and transmission, and St. Hilaire paid the $2077.60 bill in cash.
{¶ 3} Within two weeks, Croskey brought the Buick back to the Leaches because of noise and leaking fluid from the new transmission. The Leaches added transmission fluid and supplied Croskey with additional quarts of fluid, but otherwise refused to service the car until Croskey could produce the receipt for the previous work. Because St. Hilaire had the receipt and was out of town, Croskey continued to drive the Buick and to replace the leaking transmission fluid. The engine soon died, and the car was towed back to the Leaches' business.
{¶ 4} Upon St. Hilaire's return to the city, either the 17th or 18th of August 1999, she delivered the receipt to the Leaches. The Leaches agreed to replace the engine and transmission with used parts. Carl Leach told Croskey and his aunt that he did not have a 1985 Buick engine in his inventory and that he would have to wait until he received one, but they had no knowledge or appreciation of the length of the ensuing delay.
{¶ 5} During the delay, which lasted until December 1999, the car was stolen twice from the Leaches' lot. The first time, in September, the North College Hill Police Department contacted Croskey and Carl Leach to inform them that someone had stolen Croskey's Buick, driven it into the wall of the store next door, and then fled from the scene. The police investigation revealed that the Leaches had left the keys in the Buick after closing hours. The car had damage to the bumper and fender, and it was returned to the Leaches' lot.
{¶ 6} On October 2, 1999, the Leaches' business was again broken into, and this time keys to customer automobiles were taken. It was not until December 2, however, that either Leach or Croskey realized that Croskey's car had been stolen. On December 2, Croskey, tired of the delay, came to the Leaches' business to retrieve his car. When they could not find the car, Croskey called the police and reported it stolen. The police soon located the stripped Buick and stored it at an impoundment lot.
{¶ 7} Croskey sued the Leaches, alleging that they had breached a bailment and violated the Ohio Consumer Sales Practices Act, R.C. Chapter 1345. The trial court ruled that the Leaches were liable for their failure to redeliver Croskey's automobile because they had failed to exercise ordinary care to protect the car from damage or loss, and that the Leaches had breached their repair and services agreement by failing to install an operable transmission and engine. The court also held that the Leaches had engaged in several unfair and deceptive acts under the Ohio Consumer Sales Practices Act. The court ordered the Leaches to pay treble damages of $6,232.80, plus reasonable attorney fees of $3,450, for a total award of $9,682.80.
A Failed Bailment
{¶ 8} In their one assignment of error, the Leaches now claim that the trial court erred by finding that they had violated the Ohio Consumer Sales Practices Act. In other words, the Leaches argue that the trial court's judgment was contrary to the manifest weight of the evidence. The Leaches dispute their liability only under the Ohio Consumer Sales Practices Act, but because their liability under the bailment claim is so closely related, we discuss both of them here.
{¶ 9} "Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."[1]
We can reverse a judgment on the weight of the evidence "only when [it] is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice."[2]
{¶ 10} The trial court concluded that the transaction between the Leaches and Croskey was, in law, a mutual-benefit bailment. The court then found that the Leaches were liable for their failure to redeliver Croskey's automobile, because they had failed to exercise ordinary care to protect the car from loss or damages.
{¶ 11} Where one person delivers personal property to another to be held for a specific purpose, a bailment is created; the bailee must hold the property in accordance with the terms of the bailment.[3] When a bailor delivers property to a bailee and the bailee fails to redeliver the property undamaged, the bailor has a cause of action against the bailee, in either contract or tort. To establish a prima facie case in contract, a bailor must prove (1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment.[4]
{¶ 12} The record indicates that Croskey left his car with the Leaches after the initial repair failed, with the understanding that the Leaches would install another used engine and transmission. Carl Leach testified that, after the first break-in and robbery of the repair shop, the Leaches took no new or extra precautions to protect the keys from theft, because they believed they were not responsible for cars parked on their outer lots.
{¶ 13} After the second theft, the Leaches did not inventory the cars on their lots to determine if Croskey's car had been stolen, and they did not inform Croskey about the theft of his car key. When Croskey finally discovered that his car had been stolen and that it was in the police impoundment lot, the Leaches denied responsibility for recovering it or returning it to their lot.
{¶ 14} There is competent and credible evidence in the record to support the trial court's judgment that the Leaches were liable for failing to redeliver Croskey's car. The evidence also supports the court's conclusion that the Leaches had failed to provide minimum security to protect the keys from theft, and that they had breached their agreement to install an operable engine and transmission.
{¶ 15} The trial court also found numerous violations of the Consumer Sales Protection Act, R.C. Chapter 1345. The parties stipulated that the Leaches were suppliers under R.C. 1345.01(C). The trial court concluded that Croskey was a consumer under R.C. 1345.01(D), and that the automobile repair services that the Leaches had provided to Croskey were a consumer transaction under R.C. 1345.01(A). The record supports these conclusions, as Croskey was the owner and primary user of the car being repaired and had many dealings with the Leaches concerning those repairs. Therefore, the trial court properly concluded that R.C. Chapter 1345 applied to this case.
{¶ 16} R.C. 1345.02(A) states that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." The trial court found that the Leaches had violated R.C. Chapter 1345 by engaging in the following unfair or deceptive sales practices: (1) failure to honor timely the verbal warranties; (2) failure to repair or replace the used automobile transmission and engine within a reasonable time; (3) failure to give Croskey notice of the delay in commencement of the repairs beyond eight weeks without an offer of a refund, or without advising Croskey of the reason for the delay; (4) failure to take reasonable action to seek another engine or to fix the transmission; and (5) failure to redeliver the automobile or report it stolen within a reasonable time after the second theft of the keys.
{¶ 17} The record indicates that the Leaches initially refused to honor their warranty for the first repair work done on Croskey's car when they refused to service the car until he could produce the receipt for the previous work. The Leaches eventually agreed to replace the engine and transmission of Croskey's car a second time. But the Leaches did not notify Croskey that the delay before beginning the second repair would be several months, or make alternative efforts to find a quicker solution. In addition, the Leaches did not notify Croskey when Croskey's car was stolen. When the theft was finally discovered, the Leaches made no further efforts to retrieve the car from the police or to perform the promised repairs and redeliver the car to Croskey.
{¶ 18} Therefore, there was ample competent and credible evidence to support the trial court's judgment that the Leaches had violated the Ohio Consumer Sales Practices Act. Under R.C. 1345.09(F), a court may award to the prevailing party a reasonable attorney fee, if the supplier has knowingly committed a proscribed act or practice. Because the record supports the trial court's findings and conclusions, we cannot disturb its award of reasonable attorney fees to Croskey.
{¶ 19} For all the foregoing reasons, the Leaches' only assignment of error is not well taken. The trial court's judgment is accordingly affirmed.
Gorman and Sundermann, JJ., concur.
[1] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280, 376 N.E.2d 578.
[2] See Jacobs v. Benedict (1973), 39 Ohio App.2d 141, 144,316 N.E.2d 898.
[3] Thomas v. Nationwide Mutual Ins. Co. (1992), 79 Ohio App.3d 624,628, 607 N.E.2d 944.
[4] See David v. Lose (1966), 7 Ohio St.2d 97, 99, 218 N.E.2d 442.